**Europa D. O'Neill, Appellant, v. Continental Illinois Company et al., Appellees.**

**Gen. No. 44,787.**

Heard in the second division of this court for the first district at the April term, 1949. Opinion filed June 2, 1950. Rehearing denied June 14, 1950. Released for publication June 15, 1950.

LEVISOHN & LEVISOHN and WILLIAM J. CORRIGAN, all of Chicago, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellees; FRANK D. MAYER, LEO F. TIERNEY and HARRY ADELMAN, all of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Europa D. O'Neill, plaintiff, filed her complaint against Continental Illinois Company (hereinafter referred to as the Company) and Continental Illinois National Bank and Trust Company of Chicago (hereinafter referred to as the Bank). She appeals from an order quashing service of summons on the Company and dismissing her suit as to it. After the entry of that order the Bank filed its answer to the complaint, and plaintiff's suit as to the Bank is pending in the trial court.

The verified complaint, *filed October 22, 1948,* alleges, in substance, that in 1929, at the direction of plaintiff's late husband, William L. O'Neill, the Com-

pany purchased for plaintiff $350,000 of United States Treasury Certificates, *which matured June 16, 1930;* that the Company received said certificates for plaintiff and it then became its duty to deliver such certificates to her; that said certificates were never delivered to her; that on *April 3, 1947,* and since that date *she has demanded delivery of said certificates;* that in 1939 Articles of Dissolution were issued to the Company, but that the statement therein to the effect that all debts, obligations and liabilities of the Company had been paid and discharged, or that adequate provision had been made therefor, was false and untrue, and that by reason thereof the Certificate of Dissolution was void; that pursuant to the provisions of the Articles of Dissolution the assets of the Company were delivered to trustees, who then delivered the assets to the Bank; that the Company was in effect a department of the Bank and its subsidiary. Plaintiff prays that the Articles of Dissolution be cancelled, that it be found that she has a valid claim against the Company, and that its assets be impressed with a lien. A summons directed to the Company was served on Walter J. Cummings, who appeared specially, filed a motion to quash the service of summons and return, and in his motion states that he was not then and never had been an agent of the Company; that the company ceased to exist as a corporation after its dissolution on January 21, 1939, and therefore, under the provisions of Section 94 of the Business Corporation Act, was not subject to suit in an action commenced more than two years after its dissolution, and that service could not be had upon him or upon said dissolved corporation. Attached to the motion was an affidavit of Cummings which states that the Company, a corporation, was organized under the laws of Illinois on November 12, 1928, and continued its existence until January 21, 1939, at which time its Articles of Dis-

121

solution were filed in the Office of the Secretary of the State of Illinois pursuant to the provisions of Section 80 of the Business Corporation Act, and that by reason thereof said corporation thereafter ceased to exist. Plaintiff subsequently caused a summons to be served upon L. A. Sturtz, who appeared specially, filed a motion to quash the service of summons and return thereon directed to the Company, for substantially the same reasons stated in the motion of Cummings, and in support of his motion filed his affidavit setting forth substantially the same facts as were contained in the affidavit of Cummings. On January 6, 1949, an additional affidavit, made by James R. Leavell, was filed in support of the motions to quash service of process, and therein Leavell states that prior to the dissolution of the Company he was its president and the person who executed the Articles of Dissolution in behalf of the Company; that at the time of the filing of the statement of intent to dissolve said corporation and at all times subsequent thereto and at the time of the filing of the Articles of Dissolution of said corporation, to the best of his knowledge and belief, no claim had ever been made by plaintiff against said corporation; that the statement contained in the Articles of Dissolution to the effect that all debts, obligations and liabilities of the corporation had been paid and discharged or that adequate provision had been made therefor, was based upon the balance sheets of the corporation prepared by the proper accounting officer of the corporation and that said balance sheets showed no such claim as is made in plaintiff's complaint; that although diligent search had been made for the ledger sheets and other books of original entry of said corporation, they could not be found and that affiant was informed and believed that said ledger sheets and other books and records had been destroyed in the regular course of business because of the dissolution of said corporation

122

in 1939; that to the best of his knowledge and belief no claim, liability or obligation as is presented by plaintiff in her complaint ever appeared in any of the ledgers or other books or records of original entry of said corporation; that no information relating thereto ever appeared on any records of said corporation except upon a so-called "bond record and security card," which card formed the basis of the letter written by the Bank to plaintiff, which letter is referred to in the complaint. The affiant further states that he is informed and believes that the bond record and security cards were made and maintained for the use of salesmen of the Company, and did not contain original entries, and he was informed and believes that said card was erroneous in that the said United States Treasury Certificates described in the complaint filed by plaintiff were purchased by her husband, William L. O'Neill, and not by or for plaintiff; that to the best of affiant's knowledge and belief the statements contained in the Articles of Dissolution are true and correct in that there never was any obligation or liability to plaintiff, and that plaintiff made no claim until shortly before the filing of her complaint. After a hearing upon the motion to quash the Superior court entered the order from which plaintiff appeals.

Plaintiff states: "Plaintiff's theory is that the alleged voluntary dissolution of Continental Illinois Company, is not a bar to her action, for the reason that a corporation is a creature of the statute, and its 'birth'—'existence' and 'death' are controlled by detailed statutory provisions, and it is only upon compliance with such provisions that the corporation has either 'life' or 'death.' The Illinois Business Corporation Act gives in minutest detail the steps to be taken on a voluntary dissolution, and one of these requirements is *prior payment and discharge* (or provisions therefor) *of corporate obligations*. The securities pur-

chased for plaintiff were never delivered to her, although the defendant received full payment. The defendant's obligation to the plaintiff *was not paid or discharged,* and no provision was made therefor. Hence there could be no valid dissolution, and the plaintiff has a right to maintain her action. . . . The plaintiff concedes that the records do show a purported dissolution, but asserts that such dissolution is inoperative and of no effect, for the reason that her claim was not paid or discharged, nor was any provision made therefor.''

Defendant Company states: ''The trial court did not err in sustaining the motion to quash the service of summons upon the company and in dismissing the suit as to said defendant because the said defendant had been dissolved pursuant to The Business Corporation Act more than two years prior to the institution of this action.''

Section 94 of the Business Corporation Act of 1933 (Chap. 32, par. 157.94, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 32.096]), provides:

''The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by the decree of a court of equity when the court has not liquidated the assets and business of the corporation, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name.''

Plaintiff bases her right to recover upon Section 80 of the Act [Ill. Rev. Stat. 1949, ch. 32, par. 157.80;

Jones Ill. Stats. Ann. 32.082], which reads, in part, as follows:

"When all debts, liabilities, and obligations of the corporation shall have been paid and discharged, or adequate provision shall have been made therefor, and all of the remaining property and assets of the corporation shall have been distributed to its shareholders, articles of dissolution shall be executed . . . which shall set forth:

". . .

"(c) That all debts, obligations, and liabilities of the corporation have been paid and discharged or that adequate provision has been made therefor.

". . .

"(e) That there are no suits pending against the corporation in any court. . . ."

Section 80 was amended in 1941 by the addition of the following language to subparagraph (e): "or that adequate provision has been made for the satisfaction of any judgment, order, or decree which may be entered against it in any pending suit."

Plaintiff contends that the two-year limitation provision in Section 94 does not bar her suit because her claim was not paid or discharged and no provision was made therefor, hence the alleged dissolution is not a bar to her suit.

Section 81 reads, in part, as follows:

"Triplicate originals of such articles of dissolution shall be delivered to the Secretary of State. *If the Secretary of State finds that such articles of dissolution conform to law, he shall,* when all franchise taxes, fees, and charges have been paid as in this Act prescribed:

". . .

"(c) *Issue a certificate of dissolution* in duplicate, to which he shall affix the other triplicate originals.

"... *Upon the issuance of such certificate of dissolution the existence of the corporation shall cease.*"

Plaintiff contends that the opinion in *In re Wolf Mfg. Industries,* 56 F. 2d 64 (1932), "is still the controlling decision on the point involved in this case." Plaintiff relies upon the following language in that opinion (p. 66):

"The record discloses that, when the attempted dissolution was reported, the corporation under oath assured the secretary of state that there were no corporate debts or liabilities. This was a positive misrepresentation of fact directly contrary to the purpose of the provision of the enactment, and defeating the same, for, if the state was erroneously advised that all debts had been paid and discharged, it could only assume that the corporate assets had been distributed to the persons entitled to the same, and that it was unnecessary to file a completely itemized list of corporate debts as required by the statute. Whatever might be the effect as to other persons, there can be no question that this failure to comply with the statutory provisions prevented the dissolution from becoming an effective bar to the government's action in attempting to collect the tax. And, there having been no compliance with the statute by the corporation, and the dissolution being void as to the government, the two-year limitation provided for actions against a dissolved corporation where dissolution is perfected does not apply."

In the *Wolf* case an Illinois corporation transferred its assets to certain persons as trustees under a so-called Common Law Trust, upon the consideration that the trustees discharge the liabilities of the corporation. On December 28, 1921, a report of dissolution was filed with the Secretary of State and that official on the same date issued a Certificate of Dissolution. At that time certain Federal tax liabilities ap-

126

peared in the balance sheet of assets and liabilities taken over by the Trust. On February 26, 1925, waiver of the Statute of Limitations extending the statutory period for assessment of taxes was received from the corporation, and on October 31, 1925, the corporation filed with the United States Board of Tax Appeals its appeal from the assessment made approximately two months previously. The waiver and petition for appeal were both executed in the name of the corporation by Fred A. Wolf, as Secretary and Treasurer. The Board found that there was a deficiency in the income tax paid by the corporation for the year 1919. *The Trust became bankrupt on June 12, 1929, and a claim was filed for taxes due the government.* The trustee in bankruptcy filed objections to the allowance of the claim upon the grounds that collection was barred by the Statute of Limitations and that the bankrupt was not liable for the taxes as a transferee of the corporation. The referee sustained the objections but the District Court reversed the referee and allowed the claim, and the Circuit Court of Appeals affirmed the decision of the District Court. The *Wolf* case is distinguishable from the instant proceeding for a number of reasons. That case did not hold that an Illinois corporation, under the 1919 Act, was subject to suit after the expiration of two years after its dissolution. In fact, the court in its opinion states (pp. 65, 66): "Another section of the statute (section 79) provides in effect that the remedies of third persons against the corporation shall not be affected by the dissolution, if asserted within two years from the date thereof. *This latter provision is not material upon the issue herein presented.*" (Italics ours.) The court held that where certain former corporate officers purported to act in behalf of the corporation by signing a waiver of statute limitations extending the period for assessment of taxes, the trustee

127

in bankruptcy of the trust which acquired the corporate assets could not take the position that these acts, which at least indicated the continuance of a *de facto* corporation, had no effect. Furthermore, it appeared that the balance sheets of the corporation showed the Federal tax liabilities which the Court of Appeals held could be asserted against the bankruptcy trustee. These facts were known at the time of the dissolution of the corporation and the statements filed with the Secretary of State, therefore, contained positive misrepresentations of facts. In the *Wolf* case there was a fraudulent effort made to defeat a claim of the Federal government for taxes due it. The instant case presents no situation akin to that. The *Wolf* case was decided under the General Corporation Act of 1919, amended in 1921, and while that Act contained a two-year limitation provision, there are numerous differences between that Act and the Business Corporation Act of 1933. The later Act is more positive and final with respect to the dissolution of a corporation and the bringing of a suit within the time prescribed. There is another reason that distinguishes the *Wolf* case from the instant one: At the time of the decision in the *Wolf* case in 1932 there had been no cases decided by any appellate tribunal in Illinois construing the pertinent sections of the General Corporation Act. In its opinion the court states (p. 66):

"The statute here under consideration is a comparatively recent one, and the Supreme Court of Illinois has not passed upon the effect of a failure to comply with the provisions thereof. It becomes our duty, therefore, to determine the intent of the act."

After the *Wolf* case was decided the following pertinent and important decisions were filed by appellate courts in Illinois:

In *Sarelas v. McCue & Co.*, 291 Ill. App. 540 (1st Dist. 1937), a corporation, McCue and Company, was

128

dissolved by the Secretary of State on June 22, 1932. Summonses were served on some of the defendant stockholders and some of the directors within two years after the dissolution of the corporation, but McCue and Company, the corporation, was not served until August 16, 1934. The trial court sustained the motion of the corporation to dismiss the suit as to it upon the ground that the suit against it was not brought within two years after the dissolution of the corporation as required by Section 79 of the General Corporation Act of 1919. That Act reads as follows:

"Section 79. The dissolution, for any cause whatever, of any corporation, shall not take away or impair any remedy given against such corporation, its officers, or stockholders, for any liabilities incurred previous to its dissolution, if suit therefor is brought and service of process had within two years after such dissolution."

The Appellate court affirmed the action of the trial court. In its opinion the court states (p. 545):

"Section 79 is not strictly a statute of limitation but is a conditional limitation upon plaintiff's right of action. *Dukes v. Harrison & Reidy,* 270 Ill. App. 372; *Consolidated Coal Co. v. Flynn Coal Co.,* 274 Ill. App. 405; *Bishop v. Chicago Rys. Co.,* 303 Ill. 273. The legislature apparently had in mind that after the dissolution of a corporation a creditor could bring his suit provided he did so and the summons was served on the corporation within two years."

In *Ruthfield v. Louisville Fuel Co.,* 312 Ill. App. 415 (1st Dist. 1942), a suit was brought against Louisville Fuel Company, a corporation, to recover on corporate bonds. The Company filed an appearance for the sole purpose of moving to quash the summons and the return. The alleged agent, upon whom process was sought to be served, also filed a written motion to

quash the summons and the return, which motion was supported by an affidavit which stated that he had been president of the Louisville Fuel Company, an Illinois corporation, which was dissolved by court decree on March 8, 1927, upon action of the Attorney General, and that the corporation was not in existence and had not been in existence since that date. It further appeared from the affidavits filed that after the Louisville Fuel Company had been dissolved a new corporation was organized under the same name for the purpose of acquiring the assets of the dissolved corporation. The trial court entered an order denying the motion and ordering the defendant to answer the complaint. An answer was filed repeating the allegations in the affidavits and alleging that the statute placed a limitation of two years upon the plaintiff's right to bring the suit against the dissolved corporation. A judgment was entered against the defendant and upon appeal it relied upon Section 94 of the Business Corporation Act of 1933. In its opinion the Appellate court states (pp. 427, 428):

". . . Clearly the corporation that is being sued is the Louisville Fuel Company organized in 1923. This corporation was dissolved on March 8, 1927. The instant complaint was not filed until January 11, 1939, more than 11 years after the dissolution of the corporation by judicial decree. . . . It is the law of this State that the right to maintain an action against a defunct corporation is wholly controlled by statute, and that such right must be exercised within the time fixed by the legislature. *Consolidated Coal Co. of St. Louis v. Flynn Coal Co.*, 274 Ill. App. 405; *Sarelas v. McCue & Co.*, 291 Ill. App. 540; *Dukes v. Harrison & Reidy*, 270 Ill. App. 372. . . . We are of the opinion that the cause of action stated in the complaint is barred by limitation, suit not having been brought and service of process had within two years after the date of dissolution."

*Dukes v. Harrison & Reidy,* 270 Ill. App. 372 (1933), involved an interpretation of the 1919 Act and a complaint was filed alleging that the plaintiff had recovered a judgment against Harrison & Reidy, an Illinois corporation; that an execution was issued and returned no part satisfied, and that the incorporators had failed to pay to the corporation the amounts subscribed to by them. The complaint prayed for a judgment against the subscribers for the unpaid portion of stock. The corporation filed a motion to quash service of summons and to dismiss the corporation as a defendant. An affidavit was filed in support of the motion setting forth that a decree of dissolution was entered by the Superior court of Cook county more than two years prior to the institution of suit and a Certificate of Dissolution was filed with the Secretary of State. The trial court denied the motion of the corporation. Answers were then filed by the individual defendants and the case proceeded to trial. From a judgment entered against them the defendants appealed. The Appellate court reversed the judgment and held that since the complaint was filed more than two years after the dissolution of the corporation, the corporation could not be made a party to the proceedings, that the attempted service of summons upon it did not confer jurisdiction on the court, and that the motion to quash the service of summons and to dismiss the corporation as a party defendant should be allowed.

In *Consolidated Coal Co. v. Flynn Coal Co.,* 274 Ill. App. 405 (1st Dist. 1934), a creditor brought suit for an accounting of the property and assets of the Flynn Coal Company and for judgment against stockholders for unpaid stock liabilities. The defendant filed a demurrer to the bill on the ground that Section 79 of the General Corporation Act of 1919 barred the institution of the pending suit, it having been instituted more than two years after the corporation had

been dissolved by a court decree for failure to pay franchise taxes. The lower court sustained the demurrer and entered an order quashing service of summons. The Appellate court sustained the order of the trial court and in its opinion states (pp. 411, 412):

". . . The right to maintain this action is wholly statutory, and must be exercised within the statutory time fixed by the legislature, but for this provision the complainant could not maintain an action for relief such as prayed for in the bill. The present bill of complaint was not filed within the time provided for by sec. 79 of the Corporation Act, and sec. 2 of chap. 83 of the Statute of Limitations does not apply, *Dukes v. Harrison & Reidy,* 270 Ill. App. 372, and the court properly sustained the demurrer of the defendant J. R. Troutman."

In *Markus v. Chicago Title & Trust Co.,* 373 Ill. 557 (1940), a suit was brought to foreclose a mortgage. The corporate mortgagor had been dissolved more than two years prior to the institution of the proceeding by a decree of the Superior court. The foreclosure decree entered by the trial court was affirmed by the Supreme court. No personal decree had been entered in the trial court. The Supreme court states in its opinion (p. 562):

"The dissolution of the corporation in this case, therefore, did not have the effect of destroying the mortgage lien against the premises *though it did bar, after two years, any action against the corporation itself. (Dodge v. Mack,* 22 Ill. 93; *In re Coleman,* 174 N. Y. 373.) It follows that the limitation provided in section 94 of the Corporations act, (Ill. Rev. Stat. 1939, chap. 32, par. 157.94,) limiting suits against the corporation, its officers or stockholders, to a period of two years after dissolution, is not applicable here, *though it barred any remedy against the corporation,*

132

*its officers or stockholders,* for it is quite a different thing to say that the lien of a mortgage on the property of the corporation would, by such delay, be discharged. *In this case, when this hotel corporation was dissolved it could not sue or be sued after two years,* but the obligations of its mortgage survived, and in the absence of other facts or circumstances barring enforcement of it, such remedy will be granted against the mortgaged property." (Italics ours.)

■ Plaintiff attempts to meet the foregoing Appellate court decisions and the Supreme court decision by claiming that in all of them the corporations were dissolved by decrees of court. It is a sufficient answer to this point to state that by express language Section 94 deals with dissolutions by voluntary corporate action as well as dissolutions by decree of court.

Plaintiff cites no United States court case that follows the *Wolf* case, and the contention of defendants that that case is no longer being followed in the Federal courts seems to be warranted.

In *Charles A. Zahn Co. v. United States,* 6 F. Supp. 317 (1934), the court interpreted Section 79 of the General Corporation Act of 1919 and held that two years after the dissolution of the corporation, or on March 30, 1923, the Charles A. Zahn Company ceased to exist and became incapable of transacting any business whatever in its corporate capacity, and therefore it was incapable of maintaining an action to recover internal revenue taxes paid by the corporation.

In *A. J. Bates Co. v. United States,* 3 F. Supp. 245 (1933), the court held that a waiver of limitation for assessment of internal revenue taxes executed in the name of a dissolved Illinois corporation after the expiration of two years from the date of dissolution was void.

In *Reconstruction Finance Corporation v. Teter,* 117 F. 2d 716 (1941), the District Court entered an order

133

quashing the summons and dismissing an action against an Illinois corporation which had been dissolved by court decree more than six years prior to the filing of the complaint. The court construes Sections 14 and 79 of the General Corporation Act of 1919 and states (p. 725):

"By virtue of the sections just quoted, as *construed by the Illinois decisions,* neither of these corporations had any capacity to sue, or be sued, nor to collect by suit or otherwise, any debt, or alleged debt, due it after May 20, 1935, the date of dissolution being May 20, 1933. *Dukes v. Harrison & Reidy,* 270 Ill. App. 372; *Consolidated Coal Co. v. Flynn Coal Co.,* 274 Ill. App. 405; *Sarelas v. McCue & Co.,* 291 Ill. App. 540, 10 N. E. 2d 700. See, also, *Chicago Title & Trust Co. v. 4136 Wilcox Bldg. Corp.,* 302 U. S. 120, 58 S. Ct. 125, 82 L. Ed. 147.

". . .

"We think it is clear that the court did not err in quashing the summons or in dismissing the action against the C. T. C. Investment Company. There was no such entity at the time the summons was issued, and at that time it could neither sue nor be sued." (Italics ours.)

In *In re Peer Manor Bldg. Corporation,* 134 F. 2d 839 (1943), the court held that where an Illinois corporation had been dissolved more than seven years before the filing of a petition by creditors for reorganization the court was without jurisdiction to proceed with the reorganization. In its opinion the court states (p. 841): "The State of Illinois has the power of life and death over its corporations. It says the corporation is dead. We know of no rule of bankruptcy which has the power of resurrection." The court overruled its ruling in *In re Park Beach Hotel Building Corp.,* 96 F. 2d 886, which decided that a petition in bankruptcy for reorganization of an Illinois

134

corporation could be initiated by creditors more than two years after the corporation had been dissolved.

In *Chicago Title and Trust Co. v. 4136 Wilcox Bldg. Corp.*, 302 U. S. 120 (1937), proceedings for reorganization were filed by an Illinois corporation on June 21, 1935. The corporation had been dissolved by a decree of court in May, 1931. The Federal District Court entered a turn over order on the State court receiver in possession of the corporation's property and the receiver appealed. The Circuit Court of Appeals for the Seventh Circuit affirmed the District Court and an appeal was taken to the Supreme Court. The sole question presented to that court was whether the corporation which had been dissolved could nevertheless invoke the powers of a court of bankruptcy under Section 77B. The Supreme Court reversed the Circuit Court of Appeals for the Seventh Circuit and in its opinion states (pp. 125, 126):

"Sections 14 and 79 of the Illinois statute [General Corporation Act of 1919] seem plain enough on their face; but if any doubt as to their meaning and effect would otherwise exist, that doubt has been set at rest by the decisions of the Illinois appellate courts. In *Life Ass'n of America v. Fassett*, 102 Ill. 315, decided before the sections under consideration were enacted, the state supreme court held that it was the settled policy of the state that upon the dissolution of domestic corporations, however effected, they were to be regarded as still existing for the purpose of settling up their affairs and having their property applied for the payment of their just debts. See *Singer & Talcott Co. v. Hutchinson*, 176 Ill. 48, 51, 51 N. E. 622. In *American Exchange Bank v. Mitchell*, 179 Ill. App. 612, 615, 616, the general rule was announced that after a corporation is dissolved, it is incapable of maintaining an action; and that all such actions pending at the time of dissolution abate, in the absence

135

of a statute to the contrary. The state decisions following the enactment of these sections make it clear that this general rule still remains in force in Illinois except for the specific modifications in respect of time and circumstance set forth in Sections 14 and 79. See *Dukes v. Harrison & Reidy*, 270 Ill. App. 372; *Consolidated Coal Co. v. Flynn Coal Co.*, 274 Ill. App. 405. See, also, *A. J. Bates Co. v. United States*, 3 F. Supp. 245, 248; *Charles A. Zahn Co. v. United States*, 6 F. Supp. 317, where the Court of Claims held that under these sections of the Illinois statute an Illinois corporation ceased to exist and became incapable of transacting any business whatever in its corporate capacity; and that a suit purporting to be brought by a dissolved corporation after two years to recover internal-revenue taxes paid by the corporation could not be maintained.

"It is plain enough, under the Illinois statute, that after the expiration of two years from the date of its dissolution, respondent was without corporate capacity to initiate any legal proceeding—including a proceeding under Section 77B, unless we are able to say that the statute, in its terms or in its application, is in conflict with Section 77B."

██ In our judgment the language of Section 94 is clear and unambiguous. Under that section any right of claim existing on behalf of a corporation or any liability incurred by a corporation prior to its dissolution may be enforced if the action is commenced "within two years after the date of such dissolution." We have neither the power nor desire to nullify the plain and wholesome provision of Section 94. In plaintiff's complaint she alleges that in *1929*, at the direction of her late husband, the Company purchased for her $350,000 of United States Treasury Certificates, which matured *June 16, 1930;* that the Company received said certificates for her, but did not deliver

them to her; that on *April 3, 1947,* she demanded delivery of the certificates. The Company was dissolved on January 21, 1939, and plaintiff did not commence the instant proceedings until October 22, 1948. Almost twenty years have elapsed since the date of the alleged purchase. Plaintiff's claim against the Company demonstrates, we think, the necessity of the limitation provision of Section 94.

A motion has been filed in this court to dismiss the instant appeal upon the ground that the order appealed from is not a final or appealable order. That motion was reserved to hearing. It will be denied. (See *Butterfield v. Diekman,* 200 Ill. App. 627; *Farmers Bank of North Henderson v. Stenfeldt,* 258 Ill. App. 428; *People ex rel. Mikel v. Illinois Racing Commission,* 310 Ill. App. 68; *Roddy v. Armitage-Hamlin Corp.,* 401 Ill. 605.)

The judgment order of the Superior court of Cook county entered January 27, 1949, sustaining the motion to quash the service of summons and dismissing the suit as to Continental Illinois Company is affirmed.

*Judgment order affirmed.*

FRIEND, P. J., and SCHWARTZ, J., concur.