BETTY VANCE, Indiv. and as Special Adm'r of the Estate of Marvin J. Vance, *et al.*, Plaintiffs-Appellants, v. NORTH AMERICAN ASBESTOS CORPORATION *et al.*, Defendants-Appellees.

Fourth District   No. 4—90—0085

Opinion filed September 20, 1990.

James Walker, Ltd., of Bloomington, for appellants.

Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington (John L. Morel, of counsel), for appellees.

JUSTICE GREEN delivered the opinion of the court:

At all times applicable here, section 94 of the Business Corporation Act (Act) stated:

"The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by the order of the court when the court has not liquidated the assets and business of the corporation, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name." Ill. Rev. Stat. 1977, ch. 32, par. 157.94.

We are concerned here with the question of whether, if ever, a party allegedly tortiously injured by a corporation subject to the Act can seek redress against such a corporation beyond the statutory grace period after a dissolution of that corporation. We conclude it could not be done here.

On May 27, 1986, plaintiffs Betty Vance, as special administrator of the estate of Marvin Vance, and individually, Willard Tipsord, and Otto Kessinger filed suit in the circuit court of McLean County against defendants North American Asbestos Corporation (NAAC) and Max Meyer seeking damages arising from tortiously inflicted asbestos-related injuries to Marvin Vance, Tipsord, and Kessinger. The complaint anticipated a response by NAAC that the Secretary of State had issued a certificate of its dissolution on May 19, 1978, and so alleged. Plaintiffs then set forth various reasons why they deemed the dissolution of NAAC should not make NAAC immune to the instant suit. Substantial supporting documents incorporated into the complaint accompanied the complaint. An amended complaint incorporating this material was filed. On July 21, 1986, a motion was filed on special and limited appearance seeking to quash the summons served on NAAC. It purported to be brought by NAAC and alleged the court could acquire no personal jurisdiction of NAAC as the two-year period of section 90 of the Act had expired.

After a hearing, the circuit court agreed with NAAC and entered an order on July 21, 1986, quashing the summons and dismissing the complaint as to NAAC. By that time, the complaint had been amended. The order of July 21, 1986, became appealable recently when summary judgment was entered in favor of defendant Meyer.

Plaintiffs have appealed the order of July 21, 1986, dismissing NAAC. Plaintiffs do not dispute that ordinarily a business corporation subject to the Act is immune from suit when, as set forth in section 94 of the Act, more than two years have elapsed after issuance of a certificate of dissolution. Rather, plaintiffs maintain (1) if NAAC was validly dissolved, it had no power to appear and seek dismissal; (2) NAAC waived its right to claim it was dissolved when it brought suit against another entity more than four years after its dissolution; and (3) the dissolution was fraudulent or was improperly brought against plaintiffs. We disagree and affirm.

■ Plaintiffs' argument that the dismissal of the suit against NAAC was in error because it was made pursuant to a motion by NAAC which was a nonentity is analogous to the dispute as to which originated first, the chicken or the egg. NAAC contends the argument it could not make a motion because of its lack of capacity constitutes an admission NAAC also lacks the capacity to be sued. The issue is an interesting philosophical one. However, the better rule seems to be that a party sued as a corporation can appear in that capacity to assert its lack of existence. (9A W. Fletcher, Cyclopedia Corporations §4531, at 185 (perm. ed. rev. 1985).) A contrary rule would result in further proceedings but would not eliminate the necessity for an ultimate determination as to whether NAAC can be sued under present circumstances as the issue could be raised at any stage of the proceedings. See *Lewis v. West Side Trust & Savings Bank* (1941), 377 Ill. 384, 36 N.E.2d 573; *Tyler v. J.C. Penney Co.* (1986), 145 Ill. App. 3d 967, 496 N.E.2d 323.

■ In regard to plaintiffs' second claim of error, the record shows that on July 22, 1982, well more than two years after receiving its certificate of dissolution, NAAC and Mary Openheim, its liquidating receiver, filed a complaint in the circuit court of McLean County against UNARCO Industries, Inc., seeking contribution in regard to NAAC's possible liability in pending litigation. Plaintiffs cite no authority holding the filing for such relief constitutes a waiver by NAAC of any right to subsequently rely upon its certificate of dissolution in response to future suits brought against it. We know of no such authority. Accordingly, we hold no waiver resulted.

Finally, we come to the heart of the case. The issue is whether plaintiffs' allegations are sufficient to present a factual question as to whether, because of fraud or other circumstances, the NAAC's dissolution should be disregarded even though the suit was not commenced until many years after the expiration of the two-year period of section 94 of the Act. The record undisputedly indicates that upon dissolution,

the assets of NAAC were turned over to Mary Openheim as a liquidating receiver. However, plaintiffs' lead counsel, in responding to defendants' motion to dismiss, presented an uncontested affidavit that, on information and belief, on October 3, 1986, policies of liability insurance issued by Zurich Insurance Company covering NAAC were still in existence with coverage in excess of $3 million not yet exhausted. Plaintiffs also presented correspondence between NAAC and its sole shareholder, Cape Industries, indicating the purpose of dissolving NAAC was because of its exposure to liability and suggesting a new Canadian corporation be formed to perform the same function in selling asbestos that NAAC had performed.

When NAAC dissolved, section 80 of the Act (Ill. Rev. Stat. 1977, ch. 32, par. 157.80) required that in order to obtain a certificate of dissolution from the Secretary of State pursuant to section 81 of the Act (Ill. Rev. Stat. 1977, ch. 32, par. 157.81), NAAC issue articles of dissolution which stated, *inter alia*, "[t]hat there are no suits pending against the corporation in any court, or that adequate provision has been made for any judgment" obtained (Ill. Rev. Stat. 1977, ch. 32, par. 157.80(e)). Plaintiffs alleged in their complaint that NAAC executed such articles knowing it had many suits pending and would have many more. This statement in these articles together with the information indicating NAAC dissolved to avoid further liability is the basis of plaintiffs' claim NAAC was guilty of fraud in its dissolution.

Plaintiffs' position finds little support in Illinois decisions. At common law, dissolution of a corporation prevented suit against the corporation and the required abatement of existing proceedings. (*Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Building Corp.* (1937), 302 U.S. 120, 124-25, 82 L. Ed. 147, 150-51, 58 S. Ct. 125, 127; *Blankenship v. Demmler Manufacturing Co.* (1980), 89 Ill. App. 3d 569, 572, 411 N.E.2d 1153, 1155.) Such is still the law in regard to criminal prosecutions of corporations. (*People v. Parker* (1964), 30 Ill. 2d 486, 197 N.E.2d 30; *People v. Boyce* (1987), 156 Ill. App. 3d 1036, 509 N.E.2d 776.) However, section 94 of the Act gives survival to civil causes of action commenced within its two-year period. *Blankenship*, 89 Ill. App. 3d at 573, 411 N.E.2d at 1156; *Poliquin v. Sapp* (1979), 72 Ill. App. 3d 477, 481, 390 N.E.2d 974, 978.

In *Blankenship*, a plaintiff brought suit against a corporation and its former president more than two years after its dissolution, seeking recovery in strict liability for defective product. That plaintiff alleged the corporation and its president had failed to provide for likely future liability resulting from the dangerous nature of the corporation's product. Dismissals as to both defendants because of the untimeliness

of the complaint were affirmed. The court reasoned that the reference in section 94 of the Act concerning provision by the corporation in regard to debts, liabilities or obligations of the corporation refers to those incurred before dissolution and not debts, liabilities, or obligations which might be anticipated but had not ripened. This was deemed to be so regardless of when the cause of action accrued. The appellate court also held the circuit court did not err in refusing to dismiss without prejudice so that suit could be renewed if a liability insurance policy covering the dissolved corporation for the plaintiffs was later discovered. The court stated that discovery of such a policy would not render the corporation subject to suit.

In *O'Neill v. Continental Illinois Co.* (1950), 341 Ill. App. 119, 93 N.E.2d 160, a complaint alleged a defendant had purchased for her a $350,000 treasury certificate in 1929 and never turned it over to her. The defense pleaded the dissolution of that corporation in 1930, more than two years before suit was brought. The plaintiff contended that defendant's statement, in its articles of dissolution, that all its debts, obligations, and liabilities had been paid was fraudulently false. There, as here, the summons was quashed and the complaint dismissed. The appellate court held the failure to proceed within the two-year period was fatal to any cause of action. However, the language of the court also emphasized that the plaintiff made no demand for the certificate for 18 years.

More favorable to plaintiffs is the decision of the First District Appellate Court in *Moore v. Nick's Finer Foods, Inc.* (1984), 121 Ill. App. 3d 923, 460 N.E.2d 420. There, a suit was filed on May 1, 1981, on behalf of a minor for tort inflicted injuries allegedly occurring January 18, 1974. A general appearance was filed on behalf of that defendant corporation, and its motion to dismiss, purporting to be on special and limited appearance, was filed alleging the dissolution of that defendant on December 1, 1978. That motion requested dismissal of that complaint pursuant to section 94 of the Act. The circuit court allowed the motion but, on appeal, the appellate court reversed and remanded.

In *Moore,* as here, the record indicated the existence of liability insurance available to cover the occurrence if no dissolution had taken place. That plaintiff's attorney filed an affidavit stating an independent insurance adjuster had acknowledged that attorney's notice of lien in a letter of January 8, 1975, and that correspondence had continued until February 1978, when the defense refused plaintiff's request and negotiations ceased. The affidavit also asserted plaintiff had received no notice of that defendant's dissolution. However, the appel-

late court did not decide the case primarily upon the foregoing allegations. Instead, the court concluded that the policy favoring protecting the rights of minors prevailed over the policy established by section 94 of the Act.

The *Moore* court noted the exclusion of minors to the (1) statutory notice required before bringing tort suit against a city (*McDonald v. City of Spring Valley* (1918), 285 Ill. 52, 120 N.E. 476); and (2) the six-month period for filing workers' compensation claims (*Walgreen Co. v. Industrial Comm'n* (1926), 323 Ill. 194, 153 N.E. 831). The *Moore* court also pointed out that in *Wilbon v. D.F. Bast Co.* (1978), 73 Ill. 2d 58, 382 N.E.2d 784, the requirement for filing a wrongful death complaint within two years was also held inapplicable to minors. These cases were contrasted with the situation, as under the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 135), where timely filing was a condition of the action and thus applicable to all litigants. *Demchuk v. Duplancich* (1982), 92 Ill. 2d 1, 9, 440 N.E.2d 112, 116.

■ In conclusion, the *Moore* court pointed out that the existence of liability insurance to cover the claim of the minor would seem to prevent the court's decision from disrupting the corporate dissolution proceedings which the rule prohibiting suits after the end of the two-year period of section 94 was intended to prevent. However, we do not interpret *Moore* to indicate that the time limits of section 94 were to be disregarded in all cases where unexhausted liability policies covering the dissolved corporation are still in existence. Such a holding would be contrary to the tenor of cases covering Illinois law on the subject, which indicate even fraud is insufficient to extend the grace period from bringing actions beyond the time limits of section 94. *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.* (7th Cir. 1980), 629 F.2d 1183; *Blankenship*, 89 Ill. App. 3d 569, 411 N.E.2d 1153; *O'Neill*, 341 Ill. App. 119, 93 N.E.2d 160.

We recognize the problem created by the situation alleged here. However, we know of no rule prohibiting a corporation from dissolving because of fear of liability arising in the future. When section 94 was enacted, the two-year grace period must have been deemed by the legislature to be the appropriate time span to allow suit against the dissolved corporation thus balancing the need to protect injured parties against the need to give finality to a corporate dissolution. In our present industrial economy, a long period of time may, elapse between conduct by industrial corporations which injures people and the discovery of those injuries by the injured parties.

■ When the Business Corporation Act of 1983 (1983 Act) (Ill. Rev. Stat., 1984 Supp., ch. 32, par. 1.01 *et seq.* (eff. July 1, 1984)) was

enacted, section 94 (Ill. Rev. Stat. 1983, ch. 32, par. 157.94) was replaced by section 12.80 of the 1983 Act (Ill. Rev. Stat., 1984 Supp., ch. 32, par. 12.80), which contained the same wording, except that the grace period was extended from two years to five years. We are unaware of any official explanation for that change, but, logically, the General Assembly must have made the change as its response to the problem arising because of the increasing time span between injuries and the discovery of those injuries by injured persons. We deem this to be the new balance given by the legislature to the conflicting interests we have described. Otherwise, we detect no legislative intent to upset the previous decisions giving a strict interpretation to the stated grace period for suits against dissolved corporations.

Accordingly, we affirm.

Affirmed.

KNECHT, P.J., and LUND, J., concur.