889 P.2d 1234

**Jose P. QUINTANA, Personal Representative of the Estate of Roland J. Quintana, Deceased, Plaintiff–Appellant,**

v.

**LOS ALAMOS MEDICAL CENTER, INC., a New Mexico Corporation, Defendant–Appellee.**

No. 14447.

Court of Appeals of New Mexico.

Dec. 2, 1994.

Certiorari Granted Jan. 19, 1995.

Certiorari Quashed Feb. 13, 1995.

Stephen Durkovich, Albuquerque, for plaintiff-appellant.

Jay R. Hone and Paula Z. Kahn, Law Offices of Jay R. Hone, Albuquerque, for defendant-appellee.

## OPINION

ALARID, Judge.

Plaintiff Jose P. Quintana, personal representative of the estate of Roland Quintana, appeals from the order of the trial court granting summary judgment to Defendant Los Alamos Medical Center, Inc. (LAMC), a dissolved New Mexico nonprofit corporation. In seeking summary judgment, LAMC did not dispute the factual allegations of the complaint. During November of 1959, Roland Quintana, Jose Quintana's four-year-old son, had some cavities in his teeth filled at LAMC. In connection with this, he was given sodium pentothal. Roland never recovered consciousness after the procedure and died three days later, on November 21, 1959. At the time of his death, Plaintiff was told that Roland was hypersensitive to the sodium pentothal used during the procedure.

At the time of this incident, LAMC was a New Mexico nonprofit corporation, operated by a Board of Directors under a contract with the Atomic Energy Commission. On December 27, 1963, LAMC was dissolved.

Sometime in 1987, Plaintiff was advised that Roland had in fact been given an overdose of sodium pentothal, and that this was the cause of his death. Plaintiff filed suit for damages in district court on December 31, 1990. LAMC filed a motion to dismiss, arguing that because it had been dissolved in 1963, it no longer had the capacity to sue or be sued. In support of its motion, LAMC filed the certificate of dissolution and other information concerning its dissolution. Thus, the motion became one for summary judg-

ment. *See Transamerica Ins. Co. v. Sydow,* 97 N.M. 51, 54, 636 P.2d 322, 325 (Ct.App. 1981). The trial court granted the motion and dismissed Plaintiff's complaint. Plaintiff appealed to this Court.

We note at the outset that the parties have very different views of this matter. Plaintiff's arguments in this case are based primarily on tort law, while Defendant's arguments raise issues concerning corporate law. We assume without deciding that this is a claim for medical malpractice, and that the Medical Malpractice Act does not apply because the alleged act of malpractice occurred prior to the adoption of the Act. *See* NMSA 1978, § 41–5–13 (Repl.Pamp.1989). Thus, the applicable limitations period is three years. *See Roberts v. Southwest Community Health Servs.,* 114 N.M. 248, 254–57, 837 P.2d 442, 448–51 (1992). We further assume without deciding that LAMC fraudulently concealed the cause of death from Plaintiff, and thus the limitations period was tolled until Plaintiff learned the true cause of his son's death in 1987. *See Garcia v. Presbyterian Hosp. Ctr.,* 92 N.M. 652, 655, 593 P.2d 487, 490 (Ct.App.1979); *Hardin v. Farris,* 87 N.M. 143, 146, 530 P.2d 407, 410 (Ct.App. 1974); *but see Roberts,* 114 N.M. at 257, 837 P.2d at 451 ("[C]ause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause."). Therefore, we assume that the complaint was filed within the limitations period. However, we hold that by the time that Plaintiff filed his complaint, LAMC could no longer be sued. Accordingly, we affirm the trial court's dismissal of the complaint.

At common law, a corporation ceased to exist on the date it was dissolved, and all actions pending against it abated. In order to ameliorate the harshness inherent in the situation, equity allowed suits against the directors and shareholders who had received assets of the corporation on its dissolution, at least to the extent those assets could be traced. *See Smith v. Halliburton Co.,* 118 N.M. 179, 183, 879 P.2d 1198, 1202 (Ct.App. 1994), *cert. denied.* 16A William M. Fletch-

er, *Fletcher Cyclopedia of the Law of Private Corporations* § 8142 (perm. ed. rev. vol. 1988 & 1994 Cum.Supp.) (hereinafter *Fletcher*); *Suarez v. Sherman Gin Co.,* 697 S.W.2d 17, 19 (Tex.Ct.App.1985).

At this point, all states have adopted statutes that, in essence, continue the existence of a corporation for purposes of winding up its affairs after it is formally dissolved. *Fletcher, supra,* §§ 8143, 8157. These statutes are generally referred to as survival statutes, meaning survival of the corporation's existence for a period of time after dissolution. Once the survival period has ended, the corporation ceases to exist and can no longer be sued. *See Smith,* 118 N.M. at 179, 879 P.2d at 1202. The policy behind this has been expressed as follows:

> There should be a definite point in time at which the existence of a corporation and the transaction of its business are terminated. To allow ... the continued prosecution of lawsuits perverts the definiteness and orderly process of dissolution so as to produce a continuous dribble of business activity contrary to the intent of the winding up provisions of the statute.

*Bishop v. Schield Bantam Co.,* 293 F.Supp. 94, 96 (N.D.Iowa 1968).

■ We turn now to New Mexico law concerning the survival of corporations after dissolution. At the time LAMC was dissolved in 1963, the act that governed nonprofit corporations focused on the organization of nonprofit corporations. *See* NMSA 1953, Repl. Vol. 8, Pt. 1, §§ 51–14–20 to –40. The dissolution of LAMC apparently was controlled by the general corporation act. *See* NMSA 1953, Repl.Vol. 8, Pt. 1, § 51–2–3; *State v. Sunset Ditch Co.,* 48 N.M. 17, 23, 145 P.2d 219, 222–23 (1944); *cf. State v. Bank of Magdalena,* 33 N.M. 473, 270 P. 881 (1928) (holding that, in the absence of specialized law, state bank was subject to dissolution law for corporations). Under the general corporation act, LAMC continued to exist for an unlimited period of time after dissolution for the purposes of prosecuting and defending lawsuits. *See* NMSA 1953, Repl.Vol. 8, Pt. 1, § 51–7–3.

In 1967, the general corporation act and specifically Section 51–7–3 were repealed by 1967 New Mexico Laws, Chapter 81, Section 135. In its place, the legislature adopted the Business Corporation Act (now codified at NMSA 1978, Sections 53–11–1 to 53–18–12 (Repl.Pamp.1993)). However, the Business Corporation Act specifically defined "corporation" as corporations for profit. 1967 N.M.Laws, ch. 81, § 2 (now codified as § 53–11–2(A)). As a result, there was no longer a statute that provided for the survival of a nonprofit corporation after its dissolution. Nevertheless, the 1967 statute repealing the general corporation act contained a savings clause, 1967 N.M.Laws, ch. 81, § 133, which may have preserved claims against LAMC. *See generally Prager v. Prager,* 80 N.M. 773, 776, 461 P.2d 906, 909 (1969) (discussing effect of savings clause).

In 1975, the entire act governing nonprofit corporations was repealed and replaced by a more comprehensive act that is now codified as NMSA 1978, Sections 53–8–1 through –99 (Repl.Pamp.1983 & Cum.Supp.1994) (the 1975 Act). The 1975 Act continues the existence of a dissolved nonprofit corporation for two years from the date of dissolution. NMSA 1978, § 53–8–63 (Repl.Pamp.1983). The 1975 Act also included a savings clause. NMSA 1978, § 53–8–99 (Repl.Pamp.1983).

Plaintiff and Defendant both acknowledge the changes in the law between 1963 and the present. However, they view them differently. LAMC contends that it is subject to the survival provisions of the 1975 Act. Plaintiff contends that the 1975 survival provision does not apply to LAMC by virtue of the 1975 savings clause, or Section 53–8–99. Under the circumstances of this case, we agree with LAMC.

■ Statutes concerning the survival period of a corporation after dissolution are generally construed as procedural rather than substantive. *See United States v. Village Corp.,* 298 F.2d 816, 820 (4th Cir.1962); *Walden Home Builders v. Schmit,* 326 Ill. App. 386, 62 N.E.2d 11, 12–13 (1945). *But see Smith,* 118 N.M. at 179–80, 879 P.2d at 1202–03 (distinguishing survival statute from statute of limitations). As a remedial or procedural matter, the survival period adopted after dissolution may apply to corporations dissolved before the effective date of the new survival statute. *Village Corp.,* 298 F.2d at 818; *Walden Home Builders,* 62 N.E.2d at 12–13. The general rule is that statutes, except those dealing with remedial procedures, are to be construed as prospective, absent clear legislative intent to the contrary. *Wilson v. New Mexico Lumber & Timber Co.,* 42 N.M. 438, 81 P.2d 61 (1938). However, the line between substance and procedure is often hazy.

Further, the substance/procedure dichotomy is not the only difficulty. There is also a question regarding the meaning of "prospective." The survival statute governs whether a lawsuit can be filed. The lawsuit filed in this case was filed years after the effective date of the survival statute, and thus to apply the statute is to affect activity that occurred after the effective date of the statute. *See Landgraf v. USI Film Prods.,* — U.S. —, — — —, 114 S.Ct. 1522, 1524–26, 128 L.Ed.2d 229 (1994) (Scalia, J., concurring) (suggesting that retroactivity of a rule is determined by reference to the activity being regulated by the rule).

In any event, the process we are engaged in is statutory interpretation. General propositions can provide guidance, but the proper applicability of a particular statute may be discerned from its purposes. We believe the legislature would have intended the same time limitation to apply to nonprofit corporations dissolved prior to the 1975 Act as those dissolved subsequently. Indeed, the reasons for repose would be stronger for pre–1975 dissolutions.

That is not to say that there is no need for transition provisions. For example, when statutes of limitation are amended to reduce the limitations period, courts have allowed a reasonable time to bring a cause of action that would have been timely but for the amendment reducing the limitations period. *See Fust v. Arnar–Stone Labs.,* 736 F.2d

1098 (5th Cir.1984); *Chicago Heights Venture v. Dynamit Nobel of Am., Inc.*, 782 F.2d 723, 725–26 (7th Cir.1986). It may therefore be appropriate to interpret the 1975 survival statute as providing two years after the effective date to bring a suit against corporations dissolved before the effective date. Indeed, it may even be sound policy to recognize equitable tolling for fraudulent concealment, so that the two-year period would begin only after discovery of the fraudulent concealment.

The courts that have considered the issue have generally rejected equitable tolling arguments, including tolling based on fraudulent concealment. The rationale is generally that survival statutes are different from statutes of limitation, and claims against the dissolved corporation must be filed within the time period stated in the survival statute. *Litts v. Refrigerated Transp. Co.*, 375 F.Supp. 675, 678 (M.D.Pa.1973) (applying Georgia law); *Blankenship v. Demmler Mfg. Co.*, 89 Ill.App.3d 569, 44 Ill.Dec. 787, 790, 411 N.E.2d 1153, 1156 (1980); *Poliquin v. Sapp*, 72 Ill.App.3d 477, 28 Ill.Dec. 615, 619, 390 N.E.2d 974, 978 (1979); *Van Pelt v. Greathouse*, 219 Neb. 478, 364 N.W.2d 14, 20 (1985); *Farmers Union Coop. Ass'n v. Mid-States Constr. Co.*, 212 Neb. 147, 322 N.W.2d 373, 376 (1982); *Bazan v. Kux Mach. Co.*, 52 Wis.2d 325, 190 N.W.2d 521, 526 (1971). Thus, courts that have considered the issue have refused to apply equitable tolling concepts to a survival period. *See Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1189 (7th Cir.1980) (refusing to apply equitable estoppel to extend the time period); *Canadian Ace Brewing Co. v. Anheuser–Busch, Inc.*, 448 F.Supp. 769, 771–72 (N.D.Ill.1978) (refusing to apply fraudulent concealment to toll the time period), *aff'd without opinion*, 601 F.2d 593 (7th Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 113 (1979); *Riley v. Fitzgerald*, 178 Cal.App.3d 871, 223 Cal.Rptr. 889, 894–95 (1986) (refusing to apply fraudulent concealment to toll the time period); *Vance v. North Am. Asbestos Corp.*, 203 Ill.App.3d 565, 149 Ill.Dec. 1, 561 N.E.2d 279 (1990) (fraud in the dissolution of the corporation); *M.S. v. Dinkytown Day Care Ctr.*, 485 N.W.2d 587, 590 (S.D.1992) (refusing to toll survival period during minority of the child victims of sexual abuse). However, there is some authority to the contrary. *But cf. Moore By and Through Moore v. Nick's Finer Foods*, 121 Ill.App.3d 923, 77 Ill.Dec. 364, 366, 460 N.E.2d 420, 422 (1984) (statutory period tolled by minority of plaintiff where there was a statutory exception for minors; general corporate statute not exclusive). However, we need not resolve that issue in this case. Even if we were to hold that the running of the survival period was tolled by the fraudulent concealment of the cause of death, the survival period would have begun to run again in 1987, when Plaintiff discovered the true cause of the death of his son. Plaintiff's complaint would still have been filed almost one year after the survival period had run.

Plaintiff argues that the two-year survival period does not apply because the claim is controlled by Section 53–8–99. That section reads as follows:

> **Effect of repeal of prior acts.** The repeal of a prior act by the Nonprofit Corporation Act [this article] shall not affect any right accrued or established, or any liability or penalty incurred, under the provisions of such act, prior to the repeal thereof.

However, Section 53–8–99 by its terms applies only to repeal of prior acts by the Act adopted in 1975. *See* 1A Norman J. Singer, *Sutherland Statutes and Statutory Construction*, § 23.39, at 437–38 (5th ed. 1993) (noting that a savings clause "is operative only to interests accrued under the positive provisions being repealed"). The 1975 Nonprofit Corporation Act did not repeal any provisions of law concerning survival of a remedy against a dissolved nonprofit corporation.

In summary, as a dissolved New Mexico corporation, LAMC was subject to the 1975 changes in the nonprofit corporation act. Even if we were willing to adopt equitable concepts to toll the application of the statute

until the discovery of LAMC's fraudulent concealment of the cause of death, a matter that we do not decide today, LAMC would have ceased to exist roughly a year before Plaintiff filed suit. Finally, Section 53–8–99 does not assist Plaintiff because the unlimited survival period on which Plaintiff relies was not repealed by the 1975 Nonprofit Corporation Act but rather by the Business Corporation Act adopted in 1967.

The order of the trial court dismissing Plaintiff's complaint with prejudice is affirmed.

IT IS SO ORDERED.

MINZNER, C.J., and HARTZ, J., concur.