DALE P. ZUCKER *et al.*, Plaintiffs-Appellants, *v.* UNITED STATES
COMPUTER CORPORATION, Defendant.—(FIRST NATIONAL BANK OF
WESTERN SPRINGS, Garnishee-Appellee.)

Third District    No. 79-810

Opinion filed July 15, 1980.

760

Roy A. Sabuco and Kurt A. Leinweber, both of Rudman & Sabuco, of Joliet, for appellants.

Robert Boyack and Ronald H. Galowich, both of Galowich & Galowich, of Joliet, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Following a hearing, the Circuit Court of Will County, on the motion of judgment-creditor plaintiffs Dale Zucker and Lawrence Bain to traverse the answers of garnishee defendant First National Bank of Western Springs submitted in response to garnishment interrogatories, entered judgment in favor of the garnishee-appellee defendant. This case is an appeal from that judgment.

The facts of this case are as follows. Plaintiffs Zucker and Bain were judgment creditors of defendant United States Computer Corporation. On November 7, 1978, the defendant (which is not a party to this appeal) deposited a $22,480 check drawn on a New York City bank (payor bank) with the First National Bank of Western Springs (hereinafter referred to as First National or the bank). This check was deposited in one of four checking accounts the judgment debtor maintained at the bank.

On November 14, 1978, First National closed each of the defendant's four accounts. This action was taken because, in the words of vice president Jeffery Walan, "we deemed ourselves to be insecure at that point." The $16,574.94 balance then remaining in the defendant's accounts was converted into cashier's checks payable to the bank with the defendant as remitter. These checks were placed in the defendant's file that Walan maintained on his desk. At the time the defendant's accounts were closed, the bank did not know the status of the $22,480 check.

At approximately 1:30 p.m. on November 16, 1978, Walan contacted the payor bank in New York City by telephone in an effort to ascertain the status of the $22,480 check. The payor bank, however, could not definitely state whether or not the check had been honored. Later in the day, at approximately 3:45 p.m., the judgment creditor plaintiffs served garnishment summons and interrogatories on the bank. In its answers to the garnishment interrogatories, the bank stated that it had no property belonging to the judgment debtor, nor was it indebted to the judgment debtor. These answers were mailed to the clerk of the court of Will County the same afternoon, and they were filed November 21, 1978.

On November 20, 1978, the garnishee defendant bank, having no notice that the check had been dishonored, presumed final payment occurred and issued and delivered the judgment debtor a cashier's check in the amount of $16,574.94. Subsequently, the judgment creditor

plaintiffs moved to traverse the bank's answers to the garnishment interrogatories.

The question before the trial court was whether at the time the garnishment summons was served upon the bank it was indebted to the defendant. The pertinent statutory provision is section 7(b) of the garnishment act, which provides:

> "(b) The garnishee shall file, on or before the return date, or within the further time that the court for cause may allow, a written answer under oath to the interrogatories, setting forth as of the date of service of the garnishment summons (1) any indebtedness due or to become due to the judgment debtor and (2) any other property in his possession, custody or control (a) belonging to the judgment debtor or (b) in which the judgment debtor has an interest." (Ill. Rev. Stat. 1977, ch. 62, par. 39(b).)

Relying on *Marengo State Bank v. West* (1971), 132 Ill. App. 2d 106, 108, 267 N.E.2d 527, and *Larson v. McCormack* (1936), 286 Ill. App. 206, 208, 2 N.E.2d 947, the trial court stated that "[a] fund is not subject to garnishment if the judgment debtor could not maintain an action therefor against the garnishee." The court proceeded to find that under the provisions of section 4—213(4)(a) of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 4—213(4)(a)) no action could be maintained by the judgment debtor against the garnishee at the trial of the garnishment summons. Section 4—213(4)(a) provides:

> "(4) Subject to any right of the bank to apply the credit to an obligation of the customer, credit given by a bank for an item in an account with its customer becomes available for withdrawal as of right
>
>> (a) in any case where the bank has received a provisional settlement for the item,—when such settlement becomes final and the bank has had a reasonable time to learn that the settlement is final."

Under the terms of this section, the judgment debtor was entitled to withdraw credit given by the bank for a deposited item only "when such settlement becomes final and the bank has had a reasonable time to learn that the settlement is final." Prior to final settlement, provisional credit given may be withdrawn by the customer but not "as of right." Consequently, the banker's liability for refusal to honor a customer's withdrawal request is dependent upon final settlement. In the instant case, the garnishment summons was served upon the garnishee on November 14, before there had been final settlement of the $22,480 check. Because at that time the bank's indebtedness was not fixed or certain but of a contingent nature, the judgment debtor could not withdraw the credit given for that check as of right and consequently could not maintain a

cause of action against the bank for a wrongful refusal to honor its withdrawal request. Accordingly, under *Marengo* and *Larson*, the bank held no fund that could be subject to garnishment by the judgment creditors of the defendant customer.

There are two issues raised on appeal from the judgment of the circuit court for our consideration: First, did the trial court err in finding that the garnishee was not indebted to the judgment debtor within the meaning of section 7 of the garnishment act; and secondly, did the trial court err in not finding that at the time the garnishment summons was served, the garnishee had property either belonging to the judgment debtor or in which the judgment debtor had an interest under section 7 of the garnishment act.

In taking the position that the bank was indeed indebted to the judgment debtor when the garnishment summons was served, the judgment-creditor plaintiffs argue alternatively that the test applied by the trial court to determine the contingency or a noncontingency of the indebtedness (*i.e.*, no garnishment action can lie unless the judgment debtor can maintain an action against the garnishee) was not the exclusive test, and that the indebtedness of the garnishee was not contingent but in fact fixed and certain. With regard to the first contention, the plaintiffs rely primarily upon *Zimek v. Illinois National Casualty Co.* (1939), 370 Ill. 572, 19 N.E.2d 620. However, that case does not stand for the proposition that the determination of whether an action could be maintained by the judgment debtor against the garnishee is but a convenient test used to ascertain whether the garnishee's indebted to the judgment debtor for purposes of the garnishment act. Because *Zimek* is an integral part of the plaintiff's argument, it merits some detailed analysis.

■■■ In *Zimek*, the judgment creditor, Fieldcamp, recovered a $5,000 judgment against Theodore Zimek for injuries sustained in an automobile accident. Fieldcamp subsequently brought garnishment proceedings against Zimek's liability insurer, Illinois National Casualty Company. Illinois National, however, refused to pay Fieldcamp on the grounds that the liability insurance policy did not provide coverage under the facts.[1] On appeal from a judgment in the garnishment proceeding against the insurer, the insurance company contended, *inter alia*, that the claim against it was not subject to garnishment because it was contingent. After reciting the rule that the indebtedness sought to be garnished must be a liquidated sum due without contingency at the date when the answer to

---

[1] Zimek's wife was the owner of the car and the named insured of the policy which provided coverage for all persons operating the car with the insured's permission. The insurance company's position was that Zimek had been driving the car without the insured's permission at the time of the accident and consequently under the terms of the policy, there was no coverage.

the garnishment suit is filed,[2] the court stated "[u]sually it must be a claim on which the judgment debtor, himself, could have maintained an action against the garnishee." (370 Ill. 572, 576, 19 N.E.2d 620, 622-23.) The court elaborated on this point:

"It is also clear that the claim is an indebtedness subject to garnishment because Zimek, himself, might have sued the casualty company for the amount of his liability to Mabel Fieldcamp. The issue before the court in such case would be whether he was operating the automobile with the permission of his wife when the accident occurred. We can see no reason for refusing to allow the judgment creditor to be substituted as plaintiff and to have that issue determined in a garnishment suit. The company insists that because Zimek would have had to sue on the contract of insurance instead of bringing an action of debt or *indebitatus assumpsit*, garnishment proceedings cannot be invoked. But the form of action in which the judgment debtor could have recovered from the garnishee can make no difference here, so long as the indebtedness of the garnishee is liquidated and not contingent upon a future event. A determination of whether an action of debt or *indebitatus assumpsit* will lie against the garnishee is merely a convenient test to ascertain whether the claim is liquidated and not contingent." (370 Ill. 572, 577, 19 N.E.2d 620, 623.)

From this passage it is clear that in determining whether a garnishment action may lie against the garnishee the form of the action which the judgment debtor could have maintained against the garnishee is irrelevant. What is highly relevant, however, is whether any action could be maintained. The plaintiffs' use of *Zimek* to support their contention, that the determination of whether an action could be maintained by the judgment debtor against the garnishee is nothing more than a "convenient" test to ascertain whether indebtedness exists for purposes of the garnishment act, is misplaced. This test is more than a mere convenient method. In fact, this court has recently stated that "[t]he general rule is that a claim asserted by a judgment creditor against a garnishee must be one which the judgment debtor himself could have maintained." (*Hunter Mfg., Inc. v. Hines* (1979), 76 Ill. App. 3d 664, 665, 395 N.E.2d 186, 187, Accord, Ill. Ann. Stat., ch. 62, par. 39, Historical and Practice Notes, at 789 (Smith-Hurd 1972)). We, therefore, reject the plaintiffs' contrary assertion.

■■■ Alternatively, the plaintiffs allege that the trial court erred in granting judgment in favor of the garnishee bank because the bank's indebtedness was not contingent but rather fixed and certain. They make a number of arguments in support of this position. First, they point out

---

[2]Now the date of service of the garnishment summons (Ill. Rev. Stat. 1977, ch. 62, par. 39(b)).

that the garnishment statute provides that the garnishee must indicate in its answers to garnishment interrogatories any indebtedness "due or to become due to the judgment debtor" (Ill. Rev. Stat. 1977, ch. 62, par. 39(b)), and contend that the $16,574.94 in cashier's checks held by the bank on November 16 certainly fits this description. We disagree. Until final settlement by the payor bank, at which time the customer just becomes entitled to withdraw credit given for a deposited item as of right (Ill. Rev. Stat. 1977, ch. 26, par. 4—213(4)(a)), there is no actual indebtedness of the garnishee bank because no cause of action could be maintained by the debtor customer against the bank for a refusal to honor a request to withdraw credit. In addition, prior to final settlement it is unknown if any indebtedness will ever become due. There is always a possibility that the payor bank will dishonor the check, in which case the collecting bank can exercise its right to revoke provisional credit given the customer and charge-back against the customer's account (Ill. Rev. Stat. 1977, ch. 26, par. 4—212(1)). The bank's indebtedness to its customers becomes due only upon final settlement, and prior to that time it is only speculation whether such indebtedness will ever become due. The $16,574.94 in cashier's checks did not represent an indebtedness due or to become due to the judgment debtor for the purposes of section 7 of the garnishment act.

■■■ The plaintiffs next contend that although a collecting bank (like the garnishee bank in the instant case) is an agent of the customer during the collection process (Ill. Rev. Stat. 1977, ch. 26, par. 4—201(1)), "[a]t some stage in the bank collection process the agency status of a collecting bank changes to that of debtor, a debtor of its customer." (Ill. Ann. Stat., ch. 26, par. 4—201, Uniform Commercial Code Comment, at 462 (Smith-Hurd 1963).) According to section 4—201(1) of the Uniform Commercial Code, the agency status ceases when there is either final settlement or when a contrary intent clearly appears. The plaintiffs assert that both of these events occurred prior to November 16, and as a consequence, the bank was indebted to the defendant for purposes of section 7 of the garnishment act. Again, we disagree. Although it is true that when the bank closed the defendant's accounts on November 14 it manifested an intent to terminate its banking relationship with the defendant, such an occurrence did not create an indebtedness under section 7 of the garnishment act for reasons we have previously discussed. Further, the record is devoid of any evidence that final settlement was made by the New York payor bank prior to November 16, 1978. Even if final settlement had been made by the payor bank prior to that time, however, no indebtedness for garnishment purposes would have existed because the defendant customer would not have been able, as a matter of right, to withdraw credit given for the check (and therefore would not have been able to maintain a cause of action against the bank) until the garnishee

bank had a reasonable time to learn of final settlement (Ill. Rev. Stat. 1977, ch. 26, par. 4—213(4)(a)).

■■ Another contention of the plaintiffs is that the indebtedness of the garnishee is determined not as of the date of the service of garnishment process, but as of the date the garnishment answer is filed. Such a contention is clearly contrary to law. Section 7 of the garnishment act (Ill. Rev. Stat. 1977, ch. 62, par. 39(b)) provides that indebtedness is to be measured as of the date of service of the garnishment summons, which in this case was November 16. Because the bank was not aware of final settlement by the payor bank at that time, there was no indebtedness for garnishment purposes.

Next,

> "Plaintiff-Appellant submits that where the contingency alleged to exist is within the control of the garnishee, it offends the public policy of the State of Illinois, as well as the statute in respect to garnishments, to permit said garnishee to raise this contingency to defeat the interest of the judgment creditor."

Such an argument is without merit. The contingency, *i.e.*, final settlement, was not within the control of the garnishee but within the control of the payor bank.

■■ ■ Finally, although "[w]here the garnishee denies liability to the judgment debtor, it is incumbent upon the plaintiff, the judgment creditor, to prove the contrary" (*Hunter Mfg., Inc. v. Hines* (1979), 76 Ill. App. 3d 664, 665, 395 N.E.2d 186, 187), the plaintiffs argue that the burden of proof has instead shifted to the bank because of the existence of evidence of indebtedness, most particularly an admission in the form of a payment by the garnishee to the judgment debtor in the amount sought to be garnished. However, although this payment may constitute an admission of indebtedness, it is not probative on the issue of indebtedness at the time of the garnishment summons because the payment to the judgment debtor was made subsequent thereto. We, therefore, reject the plaintiffs' assertion that the burden of proof shifted in this case. The burden was upon the judgment-creditor plaintiffs to prove that either final settlement had occurred or that the garnishee bank had a reasonable time to learn that it had been made prior to service of garnishment summons. The plaintiffs have not met this burden.

■■ The second issue raised by the judgment-creditor plaintiffs is whether the trial court erred in not finding that at the time of the garnishment summons the garnishee had property either belonging to the judgment debtor or in which the judgment debtor had an interest (Ill. Rev. Stat. 1977, ch. 62, par. 39(b)). We do not believe that on November 16, 1978, the garnishee had property belonging to the judgment debtor. At the time the garnishment summons was served, the funds in the debtor's

account had been placed in four cashier's checks payable to the bank. Consequently, the funds no longer belonged to the judgment debtor, but to the bank.

██ Nor do we believe that at the time the garnishment summons was served, the bank possessed property in which the debtor had an interest. When the term "interest" is read in context of section 7 of the garnishment act, it is clear that the term refers to a property right constituting less than full ownership in the property sought to be garnished. The judgment debtor's designation as remitter on the cashier's checks does not give him any garnishable legal interest in the funds represented by those checks in our opinion.

In summation, we find that as of the date of service of the garnishment summons upon the First National Bank of Western Springs, there was no indebtedness due or to become due to the judgment debtor, nor did the garnishee bank possess property either belonging to the judgment debtor or in which he had an "interest." For these reasons, we affirm the judgment of the Circuit Court of Will County in favor of the garnishee bank.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.