**RIVERSIDE MARKET DEVELOPMENT CORP., et al. Plaintiffs–Appellants,**

v.

**INTERNATIONAL BUILDING PRODUCTS, INC., et al., Defendants–Appellees.**

No. 90–3531
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 15, 1991.

Scott R. Bickford, Martzell, Thomas & Bickford, New Orleans, La., for plaintiffs-appellants.

Ralph S. Hubbard, III, Friend, Wilson & Draper, New Orleans, La., for defendants-appellees.

**63.** 30 C.F.R. § 250.42 (1987), *supra* note 8.

**64.** 30 C.F.R. § 206.150 (1987), *supra* note 6.

Before THORNBERRY,
HIGGINBOTHAM and BARKSDALE,
Circuit Judges.

PER CURIAM:

The appellants, a group of developers, purchased an asbestos product manufacturing facility in New Orleans, Louisiana and converted the facility site into a shopping center. Invoking the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C.A. §§ 9601–9657 (West 1983 & Supp.1990), the appellants sought to recover cleanup costs from an officer and former majority shareholder of the asbestos product manufacturing facility. The district court granted the corporate officer's motion for summary judgment finding that no genuine issue of material fact existed to show that the officer was an "owner or operator" of the asbestos manufacturing facility within the meaning of CERCLA. After conducting a de novo review of the record, we agree with the district court's finding, and, therefore, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

This case arises from the purchase, demolition and cleanup of an asbestos manufacturing plant that had been operating on Tchoupitoulas Street at the foot of Jefferson Avenue in the middle of uptown New Orleans, Louisiana for some fifty-seven years. The plant had operated under the control of R.J. Dorn Corporation and Asbestone Corporation for twenty-five years, followed by twenty-eight years of operation under the ownership of National Gypsum Company. In 1981, National Gypsum sold the entire operation to International Building Products ("IBP"), a Delaware corporation and a defendant in the district court. After the sale, IBP continued to employ the entire National Gypsum work force, approximately 230 people, and the facility continued to manufacture asbestos products.

At the time of the purchase of the asbestos plant, IBP had two shareholders, T. Gene Prescott, holding eighty-five percent of the company's stock, and Gerard von Dohlen, holding the remaining fifteen percent. See Record on Appeal, Vol. 2 at 402 and 405. Prescott held the positions of secretary of the corporation, consultant and chairman of the board, see Record on Appeal, Vol. 1 at 93; Vol. 2 at 304 and 401, while von Dohlen served as the company's president and chief executive officer, see Record on Appeal, Vol. 2 at 304 and 395. Prescott lived in New York and visited the New Orleans facility only two to four times a year. See id. at 403. The purposes of these visits included: attending the annual Christmas party, attending a meeting for an Erectors' Association, some of whose members were IBP customers, and brief visits with executive personnel. See Record on Appeal, Vol. 1 at 93. As an IBP officer, Prescott reviewed financial statements regularly and von Dohlen testified that "[d]uring meetings of officers, [Prescott] consulted with me or other people but that's about it." See id. Von Dohlen took a more active part in the day-to-day operations of the plant, spending approximately forty percent of his work week at the New Orleans factory and negotiating contracts with various fiber suppliers to supply raw asbestos to the plant. See id. at 395–96 and 407.

IBP continued to operate the asbestos plant until 1985 when a continuing decline in the market for asbestos products forced IBP to shutdown the operation. Soon after the closing of the facility, IBP was contacted by Gordon Kolb, president of Riverside Market Development Corporation ("RMDC"), who negotiated to purchase the site in order to develop a shopping center. IBP lowered its original asking price of $3,400,000 by $410,000 in return for Kolb's promise to undertake demolition of the facility on his own and relieving IBP of that obligation. Both Louisiana and federal law require that, prior to demolition of any building, all friable asbestos must first be removed. RMDC purchased the plant site at the reduced price in November 1985 and later transferred title to the property to

Riverside Market Limited Partnership ("RMLP"). Cleanup of the site was completed in 1986. In December 1988, RMDC sued IBP as well as its two corporate officers, von Dohlen and Prescott, to recover for cleanup costs. RMDC alleged that IBP had improperly disposed of hazardous wastes including asbestos and by-products of the asbestos manufacturing process. RMLP was later added as a plaintiff by RMDC's second amended complaint. *See* Record on Appeal, Vol. 1 at 186. Still a third amended complaint substituted twelve individuals, all former partners in RMLP, as plaintiffs to replace RMDC and RMLP. *See* Record on Appeal, Vol. 1 at 104. The plaintiffs based their claims against the individual officers of IBP on section 9607(a) of CERCLA which states in relevant part that "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for [cleanup costs]." [1] 42 U.S.C.A. § 9607(a) (West Supp.1990).

In March of 1990, the defendants filed a Motion for Summary Judgment arguing among other things that the individual officers of IBP were not "owners or operators" as defined by CERCLA. In response to that motion, District Court Judge Veronica D. Wicker dismissed plaintiffs' complaint in its entirety as to T. Gene Prescott.[2] Plaintiffs filed a timely appeal and now contest the court's dismissal of their CERCLA action only as it applies to T. Gene Prescott. Therefore, the issue presented for our review may be stated as whether or not Prescott, a majority shareholder and officer of IBP, may be held personally liable for cleanup costs as an owner or operator of the asbestos manufac-

turing facility under section 9607(a) of CERCLA.

## DISCUSSION

### I. Standard of Review.

In reviewing a district court's grant of summary judgment, we review the evidence de novo and apply the same criteria as that used by the lower court. Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). For the purposes of this case, the defendant, Prescott, may rest his motion for summary judgment on the absence of evidence to support the plaintiffs' claim that he was an "owner or operator" of the asbestos plant at the time that the CERCLA violations took place. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The plaintiffs may not defeat Prescott's motion for summary judgment with "evidence [which] is merely colorable or is not significantly probative." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). The plaintiffs must instead come forward with "significant probative evidence demonstrating the existence of a triable issue of fact." *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 877 (5th Cir.1984).

### II. Owner or Operator under CERCLA.

Under 42 U.S.C. § 9601(20)(A), CERCLA defines "owner or operator" as "any person owning or operating" a facility, and it specifically excludes any "person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security

---

**1.** Another section of CERCLA, 42 U.S.C.A. § 9613(f)(1), provides that a party who removes hazardous wastes as required by the Act may seek contribution from "any other person who is liable ... under section 9607(a)."

**2.** The court did not dismiss the suit as to von Dohlen, finding that a genuine issue of material fact existed as to whether or not von Dohlen was an "operator" of the asbestos plant as defined by CERCLA. *See* Record on Appeal, Vol.

3 at 598. The district court did order a judgment in favor of both von Dohlen and IBP with regard to portions of the plaintiffs' complaint that alleged causes of action for public nuisance and causes of action arising under the Louisiana Environmental Quality Act. *See id.* at 605. These additional findings have not been contested on appeal, and we will therefore ignore them for purposes of this opinion.

interest in the vessel or facility." Prescott's position as majority shareholder of IBP did not make him an owner of the asbestos manufacturing plant. The plant was purchased by the IBP corporate entity and not by Prescott. "The property of the corporation is its property, and not that of the stockholders, as owners." 1 C. Keating & G. O'Gradney, *Fletcher Cyclopedia of the Law of Private Corporations* § 31 at 555 (1990).

■ We now turn to the question whether Prescott could have been considered an "operator" of the asbestos plant during the time that the plant was owned by IBP. Because CERCLA was a hastily drafted Act and passed through a lame-duck Congressional session,[3] it is not surprising that the statute does not explicitly describe the defining character of an "operator" as used within the statute. While we can conceive of situations where an individual director, officer or employee of a corporation may be considered an "operator" of a manufacturing facility as defined by CERCLA, this suit does not present such a situation.

Under traditional concepts of corporate law, the principle of limited liability would protect officers or employees like Prescott from being held responsible for the acts of a valid corporation. However, CERCLA prevents individuals from hiding behind the corporate shield when, as "operators," they themselves actually participate in the wrongful conduct prohibited by the Act. *See* 42 U.S.C.A. § 9607(a) (West Supp.1990) ("any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for [cleanup costs]."); *see also* S.Rep. No. 848, 96th Cong., 2d Sess. 98 (1980) (noting that society should not bear the costs of protecting the public from hazardous wastes generated by an "owner or operator who ... now wishes to be insulated from any continuing responsibilities."). In such cases, a defendant can be held individually liable for his wrongful conduct. "[T]his personal liability is distinct from the derivative liability that results from 'piercing the corporate veil'" where we would hold the owners of a less than bona fide corporation responsible for corporate acts. *United States v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d 726, 744 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *cf.* 3A S. Flanagan & C. Keating, *Fletcher Cyclopedia of the Law of Private Corporations* § 1135 (1986) ("Corporate officers are liable for their torts, although committed when acting officially."). In determining liability in cases like the one now before us, we must look to the extent of the defendant's personal participation in the alleged wrongful conduct.

The plaintiffs in this case have failed to come forward with any evidence showing that Prescott personally participated in any conduct that violated CERCLA. The record clearly indicates that Prescott spent very little time at the asbestos plant, and no evidence has been presented to indicate that such visits would have provided Prescott with the opportunity to direct or personally participate in the improper disposal of asbestos or asbestos by-products. Prescott lived in New York and only visited New Orleans two to four times a year; and his participation in plant operations were limited to reviewing financial statements and attending meetings of the officers where he consulted with von Dohlen and others. On such sparse evidence we find that the district court committed no error in granting summary judgment in favor of Prescott.

AFFIRMED.

---

**3.** *See Developments in the Law—Toxic Waste Litigation,* 99 Harv.L.Rev. 1458, 1465 & n. 1 (1986); *United States v. Mottolo,* 605 F.Supp. 898, 902 (D.N.H.1985) ("CERCLA has acquired a well-deserved notoriety for vaguely-drafted provisions and an indefinite, if not contradictory, legislative history.").