**CITIZENS ELECTRIC CORPORATION, as a class representative, Plaintiff,**

v.

**GILES ARMATURE & ELECTRIC WORKS, INC., et al., Defendants,**

and

**Lumberman's Mutual Casualty Co.,[1] Garnishee.**

Civ. No. 91–CV–4062–JLF.

United States District Court, S.D. Illinois.

Feb. 16, 1995.

"Lumberman's Mutual Casualty Co."

Douglas R. Sprong, Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO, for plaintiff.

Michael W. Morrison, Robert R. Anderson III, Tressler, Soderstrom, Malone & Priess, Chicago, IL, for Lumbermens Mut. Casualty.

John McMullen, Brown & James, St. Louis, MO, for Bituminous.

Bridget A. Kelly, Caron & Fitzgerald, Chicago, IL, for Fireman's Fund Ins. Co.

### MEMORANDUM AND ORDER

FOREMAN, District Judge:

Before the Court is a Motion for Summary Judgment on the "Capacity to Sue Issue" (Document No. 77) by defendant Lumbermens Mutual Casualty Company ("LMC"), in which defendants Bituminous Fire & Marine Insurance Company ("Bituminous") (Document No. 80) and Fireman's Fund Insurance Company ("FFI") (Document No. 81) have joined. In addition, plaintiff Citizens Electric Corporation ("Citizens") has objected (Document No. 95) to LMC's reply brief (Document No. 94) to Citizens' memorandum in opposition to LMC's motion.[1]

---

1. Citizens has objected to LMC's description of its efforts to locate the insurance policies that LMC allegedly issued to Giles. However, LMC did not base its motion on the ground that Citizens failed to meet its burden of showing that LMC actually insured Giles, and the Court does not reach that issue in deciding the present motion. Therefore, the Court notes the objection, but declines to address it further.

## FACTS

On July 3, 1987, Giles Armature & Electric Works, Inc. ("Giles") was notified by the United States Environmental Protection Agency that it was a potentially responsible party under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") concerning the investigation and remediation of hazardous materials at the Missouri Electric Works ("MEW") site in Cape Girardeau, Missouri. Previously, Giles had been voluntarily dissolved by the Illinois Secretary of State on April 1, 1986. The United States filed suit against Giles on April 1, 1991, seeking recovery of past and future response costs and fees.

On March 28, 1991, Citizens, as class representative, sued Giles seeking a declaration that Giles and its shareholders were jointly and severally liable for past and future response costs at the MEW site. Giles and Citizens entered into a settlement agreement on June 2, 1993 (Document No. 31, Attachment), and a consent judgment concerning liability for contamination at the MEW site was entered on July 27, 1993. (Document No. 38). The settlement agreement provided that collection on the judgment against Giles, its former officers, directors, and shareholders would be limited to any applicable insurance coverage. Document 30, Attachment at ¶ 2.

On or about August 5, 1991, Bituminous received notice of Citizens' claims against Giles. FFI received similar notice on or about October 1, 1991; LMC was notified on or about April 29, 1993. Citizens served garnishment summons and interrogatories on Bituminous on or about October 5, 1993; LMC and FFI received their summonses and interrogatories approximately five days later.

LMC denies it provided Giles with insurance coverage and asserts that Citizens failed to provide any evidence of such coverage. (Document No. 53, Document No. 78 at 3, Document No. 94 at 9–11). FFI concedes that it issued two policies to Giles effective from July 15, 1970, to July 15, 1976, but contends that has not been able to locate any policies, or evidence of any policies, for the period from 1964 to 1970. (Document No. 76 at 2, Document No. 82 at 2). Bituminous issued several policies to Giles, but disputes whether those policies provide coverage under the facts of this case. (Documents Nos. 62 & 63, Document No. 80 at 2).

## DISCUSSION

Summary judgment shall be granted if on the record "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When determining whether there is a genuine issue of material fact, all facts must be construed in the light most favorable to the nonmoving party and the court must draw all inferences in favor of that party. *Smart v. State Farm Ins. Co.,* 868 F.2d 929, 931 (7th Cir.1989). "The party moving for summary judgment must affirmatively demonstrate the absence of a genuine issue of material fact." *Shintom America, Inc. v. Car Telephones, Inc.,* 45 F.3d 1107, 1109, (7th Cir.1995). The non-moving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (alteration in original) (citation omitted). Furthermore, the mere existence of some evidence in support of the nonmoving party is not sufficient to deny a motion for summary judgment—there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

The central claim of the defendants' motion is that Citizens is barred from pursuing the garnishment action because that action was brought more than five years after the corporate dissolution of Giles. The Illinois Business Corporation Act's corporate survival statute, 805 ILCS 5/12.80, provides that a civil proceeding may be brought on behalf of or against a corporation within five years of dissolution of the corporation. In response, Citizens argues that (1) the former officers, directors, and shareholders of Giles are subject to personal liability under CERCLA, therefore, Giles's dissolution is irrelevant to liability of these individuals; (2) a garnishment action is not an independent proceeding, but is ancillary to the main action, which

was filed within the five-year period following Giles's dissolution; and, (3) CERCLA's liability scheme supersedes the Illinois corporate dissolution statute. (Document No. 91).

### The Capacity of Dissolved Corporations to Sue or Be Sued

■ Under Federal Rule of Civil Procedure 17(b), "the capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Therefore, the Court will look to Illinois law to determine the capacity of Giles to sue or be sued.[2]

The Illinois corporate survival statute prohibits a corporation from suing or from being sued more than five years after dissolution.[3] *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.,* 629 F.2d 1183 (7th Cir.1980); *T–K City Disposal, Inc. v. Commercial Union Ins. Co.,* 761 F.Supp. 552 (N.D.Ill.1991). "[W]here a statute continues the existence of a corporation for a certain period, it is generally held that the corporation becomes defunct upon the expiration of such period, at least in the absence of a provision to the contrary, so that no action can afterwards be brought by or against it and must be dismissed." *Canadian Ace Brewing Co.,* 629 F.2d at 1185 (citing 16A William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 8144 (rev. vol., Richard E. Eickhoff ed.)). "[T]he language of [§ 12.80] is clear and unambiguous. Under that section any right of claim existing on behalf of a corporation or any liability incurred by a corporation prior to its dissolution may be enforced if the action is commenced within [five] years after the date of such dissolu-

tion." *O'Neill v. Continental Illinois Co.,* 341 Ill.App. 119, 93 N.E.2d 160, 168 (1950). The purpose of the survival statute is "to continue the life of a corporation for [five] years for the purpose of settling its affairs and that actions to collect claims due the corporation may be begun at any time within [five] years after dissolution of the corporation." *Canadian Ace Brewing Co.,* 629 F.2d at 1185.[4]

In addition to barring the commencement of legal action, the Illinois corporate survival statute prohibits the initiation of garnishment proceedings as well. "A long line of cases has consistently held that a claim asserted by a judgment creditor against a garnishee must be one which the judgment debtor himself could have maintained." *Wolff v. Halloway,* 116 Ill.App.2d 270, 253 N.E.2d 596, 597 (1969) (citations omitted); *accord Reisman v. Delgado,* 117 Ill.App.3d 331, 73 Ill.Dec. 77, 79, 453 N.E.2d 902, 904 (1983); *Zucker v. United States Computer Co.,* 85 Ill.App.3d 759, 41 Ill.Dec. 695, 698, 408 N.E.2d 41, 45 (1980); *Hunter Mfg., Inc. v. Hines,* 76 Ill.App.3d 664, 32 Ill.Dec. 239, 240, 395 N.E.2d 186, 187 (1979). "No cause of action which accrues after dissolution may be brought against a dissolved corporation. Thus, the existence of an insurance policy is irrelevant [ ]." *Blankenship v. Demmler Mfg. Co.,* 89 Ill.App.3d 569, 44 Ill.Dec. 787, 791, 411 N.E.2d 1153, 1157 (1980); *accord Vance v. North American Asbestos Corp.,* 203 Ill.App.3d 565, 149 Ill.Dec. 1, 561 N.E.2d 279 (1990). "[W]hen the judgment creditor of an insured seeks to garnish the proceeds of an insurance policy, the insurer can assert

---

2. Citizens argues that CERCLA supersedes Rule 17(b). Document No. 91 at 14. This issue is discussed below. However, for the purposes of determining the effect of the dissolution of Giles under the Illinois corporate survival statute, the Court will look to Illinois law.

3. Section 12.80 provides:

   *Survival of remedy after dissolution.* The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by a judgment of dissolution by a circuit court of this State, or (3) by expiration of its period of duration, shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability

incurred, prior to such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name.

4. Citizens relies on *Moore v. Nick's Finer Foods, Inc.,* 121 Ill.App.3d 923, 77 Ill.Dec. 364, 460 N.E.2d 420 (1984), to support its assertion that the limitation period of the Illinois corporate survival statute is not absolute. Document No. 91 at 13. *Moore* held that the statutory right of a minor to bring suit within two years of reaching majority overrides the corporate dissolution statute. This narrow holding is inapplicable to the present case.

any defenses which it could have raised against the insured, ' "absent some provision of the law which bars the insurer from raising those defenses." ' " *Reisman v. Delgado,* 117 Ill.App.3d 331, 73 Ill.Dec. 77, 453 N.E.2d 902 (1983), (quoting *Johnson v. R & D Enters.,* 106 Ill.App.3d 496, 62 Ill.Dec. 261, 435 N.E.2d 1233 (1982)). Because Citizens neither brought suit against the defendants nor initiated garnishment proceedings within five years of Giles's dissolution, the defendants argue that Giles (judgment debtor) could not have brought a claim against the defendants (garnishees), and therefore, Citizens (judgment creditor) is precluded from bringing the garnishment action.

The original action against Giles was filed within five years of Giles's dissolution. Citizens contends that a garnishment action is ancillary to the main action; thus, the garnishment action is not barred. In response, the defendants point to *Chicago Riding Club v. Avery,* 305 Ill.App. 419, 27 N.E.2d 636 (1940), to support their contention that the garnishment action is prohibited regardless of the timing of the main action.

The plaintiff in *Chicago Riding Club* obtained a judgment against the Chicago Riding Club, a non-profit corporation, on April 29, 1938. On June 1, 1938, the riding club was dissolved. The plaintiff brought garnishment proceedings on September 1, 1938. The court upheld the dismissal of the garnishment action, noting that "[t]he law is well settled in this state that in garnishment proceedings the creditor can only recover such indebtedness as can be recovered in an appropriate action in the name of the attachment or judgment debtor against the garnishee." *Id.* 27 N.E.2d at 639 (quoting *Supreme Sitting Order Iron Hall v. Grigsby,* 178 Ill. 57, 52 N.E. 956, 957 (1899)).[5] The timing of the original action was irrelevant in *Chicago Riding Club*—the garnishment action was barred because it was filed after the statutory deadline for a dissolved corporation to bring an action. *Id.* at 631; *see also Zucker v. United States Computer Corp.,* 85 Ill.App.3d 759, 41 Ill.Dec. 695, 699, 408

N.E.2d 41, 45 (1980) ("In determining whether a garnishment action may lie against the garnishee the form of the action which the debtor could have maintained against the garnishee is irrelevant. What is highly relevant, however, is whether any action could be maintained."); *Zimek v. Illinois Nat'l Casualty Co.,* 370 Ill. 572, 19 N.E.2d 620, 623 (1939) (finding that garnishment action was proper because judgment debtor could have sued garnishee insurance company for the amount of his liability to the judgment creditor).

Although Citizens filed the original action against Giles three days before the five-year deadline, the subsequent garnishment actions were not brought against the defendants until more than five years following Giles's dissolution. Thus, under Illinois law, it is clear that the garnishment action against the defendants is barred by 810 ILCS 5/12.80 insofar as it is based upon the corporation's capacity to recover from the insurer. However, a different question is presented as to insurance coverage for the corporate officers, directors, and shareholders.

### Personal Liability of Former Officers, Directors, and Shareholders Under CERCLA

■ Citizens contends that the former officers, directors, and shareholders (collectively "officers") are personally liable for the cost of cleaning up the MEW site, and therefore, the Illinois corporate survival statute is not applicable to the liability of those individuals. Specifically, Citizens alleges that the

> underlying judgment was obtained against Giles *and* its former officers, directors, and shareholders. The judgment was obtained pursuant to Section 107(a) of [CERCLA]. CERCLA § 107(a) imposes personal liability on officers, directors and shareholders of corporate polluters when those individuals have participated in or managed the wrongful waste disposal practices of the corporate polluter. Accordingly, Citizens' judgment against Giles and its officers, directors and shareholders of Giles impos-

---

**5.** The corporate dissolution statute in effect at the time of the *Chicago Riding Club* decision provided that no legal proceedings could be brought on behalf of a corporation at any time after its dissolution.

es individual, *joint and general*[6] liability on each of them. Pursuant to the express terms of the insurance contracts at issue in this case, these officers, directors and/or shareholders are separately insured against the aforesaid liability, and the dissolution of Giles does not affect that coverage.

Document No. 91 at 1–2. (original emphasis).

This argument might have merit if the consent judgment had in fact imposed personal liability on the officers pursuant to § 107(a). However, a careful analysis of the underlying litigation shows that this argument is without merit.

The pleading requirements to establish personal liability under CERCLA are set forth in *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund,* 25 F.3d 417 (7th Cir. 1994). In *Arst,* the complaint alleged that two corporate officers had exercised authority over waste disposal operations to such a degree that they should be held liable as "owners and operators" under CERCLA § 107(a). *Id.* at 419. Specifically, the plaintiff alleged that: (1) the defendants had authority to decide whether scrap material would be accepted or rejected; (2) the defendants had knowingly exercised direct control over the handling of hazardous substances; (3) the corporate officers accepted the load of scrap that contained the PCB-containing transformer at issue; and, (4) the corporate officers had directed and controlled the employees that cut open the transformer.[7] *Id.*

In deciding whether these allegations were sufficient, the Seventh Circuit noted that "direct, personal liability provided by CERCLA 'is distinct from the derivative liability that results from piercing the corporate veil.'" *Id.* at 420 (quoting *Riverside Mkt. Dev. Corp. v. International Bldg. Prods., Inc.,* 931 F.2d 327, 330 (5th Cir.1991)). The court ultimately found the pleadings adequate to state a claim for CERCLA liability because the plaintiffs alleged that the corporate officers had not only "exercised management control over the company's operations, but also that they knowingly exercised direct and personal control over the handling of the hazardous substance at issue...." *Id.* at 421.

In so holding, however, the court emphasized that a complaint does not "automatically state a claim for CERCLA 'operator' liability merely by being directed against persons holding management or like positions." *Id.*

> [A] plaintiff must allege that persons associated with the corporation *directly* and *personally* engaged in conduct that led to the specific environmental damage at issue in the case. Without such direct, personal involvement, the corporation and not the associated individuals must be regarded as owning or operating the hazardous waste site in question.

*Id.* at 421–22. (original emphasis); *see also United States v. Gurley,* 43 F.3d 1188, 1193

6. The consent judgment provided that the defendants were subject to joint and several liability. Document No. 38. The Court is not familiar with the phrase "joint and general liability" as a term of art. The Court's research found only one reference in the Federal case law to the term "joint and general liability." It appeared in *McDonald v. Centra Corp.,* 118 B.R. 903 (D.Md. 1990), as a misquotation of the term "joint and several liability" in *Jenkins by Agyei v. Missouri,* 855 F.2d 1295, 1318 (8th Cir.1988). For purposes of the motion at hand, the Court will construe the term "joint and general liability" as synonymous with joint and several liability.

7. The allegations in the complaint included the following:

> 13. At all times pertinent to this action, [the corporate officers, "officers"] were responsible for the purchase of scrap materials by Arst Co. [The officers] had authority to make decisions regarding which scrap materials Arst Co. would accept or reject and were responsible for the preparation of purchase memoranda and the issuance of checks to pay for purchased materials. [The officers] were in charge of operations on the Arst Co. premises, and [the officers] directed and controlled the labor force in the handling, processing and resale of scrap materials.
>
> 14. On or about February 5, 1988, [one of the officers] accepted delivery [of the transformer].
>
> 16. Within days after acceptance of the transformer, Arst Co. employees, subject to the direction and control of [the officers], cut the transformer, ... causing contamination.
>
> 18. These activities were undertaken with the knowledge, approval and encouragement of [the officers].

*Id.* at 419 n. 2.

(8th Cir.1994) (holding that an individual is not liable as an "operator" under § 9607(a)(2) unless he had: (1) authority to determine whether hazardous wastes would be disposed of and to determine the method of disposal; and, (2) actually exercised that authority by personally disposing of the hazardous material or by directing others to do so); *Truck Components, Inc. v. Beatrice Co.*, No. 94 C 3228, 1994 WL 520939, at *4 (N.D.Ill. September 21, 1994) ("The *Arst* pleading requirements reflect these considerations: Active, direct, or personal involvement or control over the activities at issue suffice to state an 'operator' claim under CERCLA. General allegations of supervisory authority or corporate office suggest a theory based on respondeat superior and do not state an 'operator' claim.").

In the complaint at issue here, the plaintiffs named the corporate officers as defendants. However, the complaint's only allegations regarding the conduct of any of these defendants provide:

1) "Upon information and belief, Harold L. Chase and John E. Giles were the only officers and directors of Giles Armature at the time of its dissolution." Document No. 1, ¶ 6;

2) "Upon information and belief, Harold L. Chase, John E. Giles, Grace N. Giles, Jenna V. Vickery, Betty Lea Grassinger, Gardner J. Grassinger and Martha Gene Lundemo were all the shareholders of Giles Armature at the time of the company's dissolution and each received distributions of the company's assets upon dissolution." *Id.*, ¶ 7;

3) "Giles Armature sent PCB-containing electrical equipment to the MEW Site." *Id.*, ¶ 19; and

4) "Giles Armature arranged for the disposal or treatment of a hazardous substance(s) at the MEW Site and accepted a hazardous substance(s) for transport to the MEW Site." *Id.*, ¶ 22.

These allegations fail to establish personal liability for the officers because they are clearly insufficient under the pleading standards set forth in *Arst*. There is no allegation that the corporate officers were "directly and personally" engaged in conduct that led to the contamination at the MEW site. The complaint alleges only that Giles Armature, not the corporate officers, arranged for disposal or treatment of the hazardous waste. Therefore, the consent judgment only established joint and several liability with regard to the officers in their capacity as corporate officers; it did not as establish liability in their individual capacities. The Court finds that, not only are the allegations in Citizens' complaint insufficient to impose personal liability on Giles's former officer, directors, and shareholders, but Citizens has presented no evidence outside the pleadings to support its claim of personal CERCLA liability.

### Personal Liability of Former Officers, Directors, and Shareholders Under Illinois Corporation Law

■ Citizens' garnishment action would be permitted if Giles's former officers are subject to personal liability under general principles of corporation law. If the officers' liability is personal, as opposed to derivative from their status as shareholders, the Illinois corporate survival statute would not bar suit against the officers to enforce Citizens' claim. *Hunter v. Old Ben Coal Co.*, 844 F.2d 428, 435 (7th Cir.1988) ("If a claim is held individually, even if it arises in conjunction with a corporate matter ..., the corporate survival statute does not bar a suit to enforce the claim even if it is brought after the time period specified in the corporate survival statute."); *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1186 (7th Cir.1980) (citing *Koepke v. First Nat'l Bank of DeKalb*, 5 Ill.App.3d 799, 284 N.E.2d 671 (1972)) ("A literal reading of the [Illinois corporate survival] statute also shows that its provisions are applicable not only to a dissolved corporation but also to its directors and shareholders."); *Poliquin v. Sapp*, 72 Ill.App.3d 477, 28 Ill.Dec. 615, 620, 390 N.E.2d 974, 978 (1979) (holding that individual shareholders, having failed to bring an action within the time permitted by the corporate survival statute, could not bring an individual action for injury inflicted upon the dissolved corporation).

"Under Illinois law, a shareholder's claim is a derivative claim, not an individual claim, if the alleged injury only affects the share-

holder indirectly in his or her capacity as a shareholder." *Hunter*, 844 F.2d at 432. "If the injury is incurred by the corporation then the shareholders can only sue upon a derivative basis and not as individuals." *Poliquin*, 28 Ill.Dec. at 619, 390 N.E.2d at 977. "The critical inquiry is whether "the 'gravamen' of the pleadings state injury to the plaintiff upon an individual claim as distinguished from an injury which indirectly affects the shareholders or affects them as a whole." *Id.* (citing *Zokoych v. Spalding*, 36 Ill.App.3d 654, 344 N.E.2d 805 (1976)); *Poliquin*, 28 Ill.Dec. at 619, 390 N.E.2d at 977. However, individual stockholders may have a cause of action if they can show that "the wrongful acts are not only against the corporation but are also violations of a duty arising from a contract or otherwise, and owed directly by the wrongdoer to the stockholders." *Zokoych*, 344 N.E.2d at 813; *see also Hengel, Inc. v. Hot 'N Now, Inc.* 825 F.Supp. 1311, 1318 (N.D.Ill.1993) (holding that the "gravamen" of the pleadings allege injury to the corporation, not the individual corporate officers); *ITT Diversified Credit Corp. v. Kimmel*, 508 F.Supp. 140 (N.D.Ill.1981) (holding that individual's injury derived solely from his status as president and sole shareholder of the corporation, not from any violation of duty created by contract or otherwise).

■ In the present case, the gravamen of the pleadings is that the *corporation* arranged for disposal of hazardous material at the MEW site. Citizens' complaint does not allege that the individual officers would be subject to liability in any capacity other than their capacity as shareholders of Giles. Furthermore, Citizens has not alleged or set forth any facts to support a claim that there was a separate duty "arising from contract or otherwise" owed by the officers, as individuals, to any other party. Accordingly, the Court finds that Giles former officers, directors, and shareholders are only subject to liability in a derivative capacity as stockholders in Giles. Therefore, the Illinois corporate survival statute bars the present garnishment action with regard to any insurance policies that covered them.

## CERCLA Preemption of Federal Rule of Civil Procedure 17(b) and the Illinois Business Corporations Act

■ Citizens argues that there is a " 'clear trend' among courts [ ] to construe CERCLA to supersede [Federal Rule of Civil Procedure] 17(b) and, therefore, state dissolution laws." Document No. 91 at 14. In support of this contention, Citizens cites *Barton Solvents v. Southwest Petro–Chem*, 836 F.Supp. 757 (D.Kan.1993) and *Allied Corporation v. Acme Solvents Reclaiming, Inc.*, No. 86 C 20377, 1990 WL 322940 (N.D.Ill. July 6, 1990). However, both of these cases are clearly distinguishable from the case at hand. In both *Barton* and *Allied* the issue was whether the original CERCLA action against a dissolved corporation was barred after the time period set by the corporate dissolution statute expired. In the present case, there is no dispute that the Citizens' original action was timely under the Illinois corporate survival statute. However, neither *Barton* nor *Allied* address the issue of whether a dissolved corporation may bring suit against its insurer more than five years after dissolution.

The defendants point to *T–K City Disposal, Inc. v. Commercial Union Insurance Company, Inc.*, 761 F.Supp. 552 (N.D.Ill. 1991), to support their argument that CERCLA does not preempt the state corporate survival statute. In *T–K City*, the EPA brought a CERCLA cost-recovery action against T–K Disposal nearly fifteen years after T–K had been dissolved. T–K sought indemnification from its insurance carrier, Commercial Union. Commercial Union refused to indemnify T–K and T–K sued.

Neither of the parties in *T–K City* argued that CERCLA preempted the Illinois Business Corporation Act. *Id.* at 553. The court noted that, although some courts had found CERCLA preempted state capacity statutes, in those cases all of the corporations assets had not been distributed. *Id.* at 555 (citing *United States v. Sharon Steel Corp.*, 681 F.Supp. 1492 (D.Utah 1987); *United States v. Distler*, 741 F.Supp. 643 (W.D.Ky.1990)). Therefore, those corporations were not yet "dead and buried." *Id.* While the court questioned whether the EPA could maintain a cost recovery action against the dissolved corporation, it found that for purposes of

bringing suit against its insurer, "T–K's funeral is long over and the corporation here is dead and buried." *Id.* (citing *Distler,* 741 F.Supp. at 646). In the case at hand, Giles is "dead and buried"—all of its assets have been distributed and the time within which it could bring legal action has expired.

With regard to the specific issue of CERCLA preemption of state capacity statutes, Rule 17(b) provides that "the capacity of a corporations to sue or be sued shall be determined by the law under which it was organized." Fed.R.Civ.P. 17(b). The conflict between CERCLA and Rule 17(b) has its roots in CERCLA's liability provision, section 107 (codified at 42 U.S.C. § 9607), which provides in relevant part:

> Notwithstanding any other provision or rule of law, and *subject only to the defenses set forth in subsection (b)* of this section
>
> \*   \*   \*   \*   \*   \*
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, . . . [shall be liable for]
>
> \*   \*   \*   \*   \*   \*
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;

42 U.S.C. § 9607(a) (emphasis added).

Section 107(b) provides the applicable defenses, including an act of God, an act of war, or an act or omission of a third party. Thus, at first blush, it appears that the only defenses to liability under CERCLA are those specifically set forth in § 107(b). However, defenses to *liability* are not at issue here. The question is not whether Giles can be found *liable* in spite of the expiration of the corporate survival statute—the applicable time period had not expired when the original action was filed. The appropriate question is whether Citizens, as a judgment creditor, can bring a garnishment action against the garnishee insurance companies more than five years after Giles's dissolution.

The Seventh Circuit recently addressed a closely related issue in *Town of Munster, Indiana v. Sherwin–Williams Co., Inc.,* 27 F.3d 1268 (7th Cir.1994). In *Munster,* the issue was "whether CERCLA permits the assertion of the equitable defense of laches to bar recovery in a private party cost recovery or contribution action." *Id.* at 1269. The defendant, Sherwin–Williams, argued that limiting defenses to CERCLA liability to those enumerated in § 107(b) would, by implication, deprive defendants of the protection of statutes of limitation, accord and satisfaction, *res judicata,* and indemnity and hold harmless agreements. "Carried to its logical extreme, reading clear intent to supersede all non-statutory defenses into CERCLA's broad language and legislative history leads one to conclude that Congress intended to supersede all of the rules of civil procedure or judicial doctrines of res judicata or accord and satisfaction, whenever they frustrate the imposition of liability under CERCLA." *Id.* at 1271 (internal quotes omitted) (quoting Monica Conyngham, Comment, *Robbing the Corporate Grave: CERCLA Liability, Rule 17(b), and Post–Dissolution Capacity to Be Sued,* 17 B.C.Envtl.Aff.L.Rev. 855, 887 (1990)). The court found this "parade of horrors" argument unconvincing.

While noting that only the issue of the applicability of equitable defenses was before the court, the Seventh Circuit doubted that

> *res judicata,* collateral estoppel, accord and satisfaction, and statutes of limitation are 'defenses' as CERCLA employs the term. While the statute does not define the term, we read the defenses enumerated in § 107(b) as addressing the causation element of the underlying tort and negating the plaintiff's prima facie showing of liability. A defendant who claims that he already has litigated the same matter (res judicata), reached agreement on and paid for its damages (accord and satisfaction), *or was not sued within the relevant limitations period* does not contest whether the plaintiff can establish liability under § 107; rather he interposes a legal or statutory shield against having to litigate (or relitigate) the issue or case.

*Id.* at 1272. (citation omitted) (emphasis added).

Although it is clear this language is dicta, it is strongly persuasive in its application to the case at hand. The Court finds that Giles did not have the capacity to bring garnishment actions against its insurers more than five years after its dissolution. Therefore, under Illinois law, Citizens is barred from bringing garnishment proceedings against the defendant insurance companies.

### CONCLUSION

For these reasons, LMC's motion for summary judgment (Document No. 77), in which Bituminous (Document No. 80) and FFI (Document No. 81) have joined LMC is hereby **GRANTED.** The Clerk is directed to enter judgment accordingly in favor of defendants Lumbermens Mutual Casualty Company, Bituminous Fire & Marine Insurance Company, and Fireman's Fund Insurance Company, and against plaintiff Citizens Electric Corporation on the garnishment proceedings. All pending motions regarding the garnishment actions against Lumbermens Mutual Casualty Company, Bituminous Fire & Marine Insurance Company, and Fireman's Fund Insurance Company are **DENIED** as moot.

**IT IS SO ORDERED.**